Nos. 56,813
56,814
56,815
56,816
56,817
56,818

In the Matter of the Suspension of the License to Operate a Vehicle of GEORGE L. CARSON, MARK A. DUMLER, JOHN I. WORLEY, BERNARD W. ERBERT, EDGAR B. PARSONS and VERNON D. SHAFFER, *Appellees,* v. DIVISION OF VEHICLES, KANSAS DEPARTMENT OF REVENUE, *Appellant.*

(699 P.2d 447)

Opinion filed April 29, 1985.

*Thomas E. Hatten,* of Legal Services for Kansas Department of Revenue, of Topeka, argued the cause and *William L. Edds,* general counsel, was with him on the brief for appellant.

*Michael S. Holland,* of Russell, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: The Division of Vehicles, Kansas Department of Revenue (KDR or the department) appeals a district court determination that the department's administrative suspensions of drivers' licenses under the Kansas implied consent law, K.S.A. 8-1001, were void as violations of due process of law. Six separate cases have been consolidated on appeal and transferred to the Supreme Court from the Court of Appeals.

The six drivers (hereinafter petitioners or appellees) were all stopped by law enforcement officers who suspected each of driving while under the influence of alcohol (DUI). Following each arrest, the various arresting officers completed a "LAW ENFORCEMENT OFFICER'S CHEMICAL TEST REFUSAL

REPORT," which included driver's license information, the name of the driver and the date and place of each arrest and went on to state:

"I, [arresting officer], a law enforcement officer as defined in K.S.A. 21-3110, being first duly sworn, depose and state:

"That prior to the arrest of the above named person, on the date indicated, I had reasonable grounds to believe that said person was operating a motor vehicle while under the influence of intoxicating liquor upon a public highway.

"That pursuant to K.S.A. 8-1001, and following a lawful arrest, I requested the above named person to submit to a chemical test and said person expressly refused to take the test.

"That to the best of my knowledge the person arrested was capable of understanding my request to submit to the test and made a knowing, intelligent, free and voluntary response to that request.

"That the above and foregoing information is true and correct to the best of my knowledge."

These affidavits were sworn to, signed, notarized, and mailed to the department. Receipt of the affidavits initiated KDR administrative proceedings under K.S.A. 8-1001(c).

Thereafter, the department mailed to each driver a "Driver's License Withdrawal Notice" advising that the driver's license would be suspended as of a certain date unless an administrative hearing was requested within twenty days. Each driver requested a hearing which was held during the summer or fall of 1982. The arresting officers did not appear to testify at any of the hearings and no evidence was submitted by the KDR other than the arresting officers' affidavits. Based upon those affidavits the hearing examiner found that each driver had unreasonably refused to submit to a blood alcohol test as required by K.S.A. 8-1001, and ordered each license suspended.

All six drivers then filed petitions with the district court seeking *de novo* review of the KDR action. They claimed first they had been denied a fair and impartial administrative hearing because:

(a) The arresting officers did not appear, thereby depriving petitioners of their rights of confrontation and cross-examination;

(b) no "hearings" were actually held because the hearing officers relied solely on the arresting officers' affidavits;

(c) the affidavits contain only conclusions and opinions absent any factual support;

(d) the affidavits are hearsay.

Secondly, petitioners claimed the administrative hearings were a sham and a subterfuge, and that the department acted arbitrarily and capriciously, violating their rights to due process. Finally, they argued generally the arrests were unlawful, actions of the arresting officers were illegal, the arrests were made without reasonable grounds and petitioners did not refuse to take the test.

A pretrial hearing for all six cases was held February 14, 1983, at which the appeal of Mark L. Dumler was discussed first. The department stipulated the arresting officer was not present at Dumler's administrative hearing, although it pointed out Dumler's attorney made no request to subpoena the officer. After hearing the parties' arguments, the court on its own motion ruled:

"[A]s a matter of law that the affidavit is insufficient and that without the presence of the officer that it would be a violation in [*sic*] due process of law and that the Division of Motor Vehicles, Kansas Department of Revenue in their hearings have acted arbitrarily and capriciously and the Court is going to set aside any suspensions done on the affidavit alone without the presence of the officer."

This ruling applied to all six cases. The KDR has appealed.

The principal issue in this appeal is whether due process of law and the right of confrontation and cross-examination under the federal and state constitutions require the presence of an arresting officer at administrative hearings held pursuant to K.S.A. 8-1001. Subsection (a) of that statute states that any person operating a motor vehicle on any Kansas public highway "shall be deemed to have given consent to submit to a chemical test" to determine the person's blood alcohol content when arrested for operating a motor vehicle under the influence of alcohol. Subsection (b) details those persons authorized to administer the test when directed by a law enforcement officer, and immunizes them from liability. K.S.A. 8-1001(c) provides:

"If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the person's refusal to submit to the test shall be admissible in evidence against the person at any trial for driving under the influence of alcohol. The arresting officer shall make a report verified on oath to the division of vehicles of the refusal, stating that prior to the arrest the officer had reasonable grounds to believe that the person was driving under the influence of alcohol. Upon receipt of the report, the division immediately shall

notify the person of the right to be heard *on the issue of reasonableness of the failure to submit to the test.* If, within 20 days after such notice is mailed, the person makes a written request for a hearing, the division shall hold a hearing in the county where the alleged violation occurred, or in a county adjacent thereto, within the time and in the manner prescribed by K.S.A. 8-255 and amendments thereto. Notice of the time, date and place of hearing shall be given to the person by restricted mail, as defined by K.S.A. 60-103. If a hearing is not requested or if, after the hearing, the division finds that the refusal was not reasonable, and after due consideration of the record of motor vehicle offenses of the person, the division shall suspend the person's license or permit to drive or non-resident operating privilege for a period of not less than 120 days and not more than one year." (Emphasis added.)

Due process of law has been considered and defined in numerous cases. In *State v. Durst,* 235 Kan. 62, Syl.¶ 6, 678 P.2d 1126 (1984), we held:

"At a minimum the essential elements of due process of law, in an action affecting a person's life, liberty or property, are notice and an opportunity to be heard at a meaningful time and in a meaningful manner."

The first question addressed by the parties is whether an arresting officer's sworn oath that a person has refused to submit to a chemical test is sufficient on its face to permit suspension of that person's driver's license, consistent with the requirements of due process? In support of its contentions, the department relies on our decision in *Wulfkuhle v. Kansas Dept. of Revenue,* 234 Kan. 241, 671 P.2d 547 (1983), and the United States Supreme Court's recent opinion in *Illinois v. Batchelder,* 463 U.S. 1112, 77 L.Ed. 2d 1267, 103 S.Ct. 3573 (1983).

In *Wulfkuhle,* the petitioner Steven C. Wulfkuhle appealed the suspension of his driver's license following an administrative hearing on the reasonableness of his refusal to submit to a blood-alcohol test after his arrest for DUI. The arresting officer signed and filed with the KDR an affidavit similar to the ones herein. The affidavit was notarized. Upon receiving notice that his driver's license was to be suspended Wulfkuhle requested a hearing as provided in K.S.A. 1981 Supp. 8-1001(c). Although this statute was amended in 1982, the amendments are not pertinent to the issues here. Wulfkuhle, at the time he requested his administrative hearing, asked that the arresting officer and the notary public who signed the officer's affidavit be subpoenaed for the hearing. The KDR refused to issue the subpoenas. At the hearing Wulfkuhle's driving privileges were restricted for ninety days based upon his refusal to submit to the test. He then

filed a petition in the district court contending the KDR's refusal to subpoena the arresting officer and notary public violated his constitutional right to face and examine his accuser, and was arbitrary, capricious and without legal authority. The district court granted summary judgment to the KDR and Wulfkuhle appealed. As stated by Chief Justice Schroeder in his opinion for the court:

"The question presented before this court is whether the Department of Revenue, Division of Vehicles, is required to issue subpoenas when requested by the licensee to compel the arresting officer, notary public and other relevant witnesses to appear at a hearing conducted pursuant to K.S.A. 8-255(b) (Weeks) to establish that the chemical test refusal report was sworn to as required by K.S.A. 1981 Supp. 8-1001 or to be examined concerning the reasonableness of the licensee's refusal to submit to the test." 234 Kan. 243.

This court held that the KDR is required to issue subpoenas, when requested to do so, to compel the arresting officer, notary public or other relevant witnesses to appear at the administrative hearing to be examined by the driver licensee.

Chief Justice Schroeder prefaced his analysis with two established rules governing driver's license suspension hearings.

"Where a licensee refuses to submit to a chemical test 8-1001 establishes the right to a hearing to determine 'the reasonableness of the failure to submit to the test.' The court in *Marbut v. Motor Vehicle Department,* 194 Kan. 620, 624, 400 P.2d 982 (1965), noted this is the sole issue to be decided at the administrative hearing. Likewise, this is the only issue to be decided by the district court when it conducts a de novo review pursuant to 8-259. *Lira v. Billings,* 196 Kan. 726, 730, 414 P.2d 13 (1966)." 234 Kan. at 244.

Regarding the 8-1001(c) refusal report, the court stated:

"The requirement that the report be sworn to is jurisdictional. Where the validity of the verification of the refusal report is challenged by the licensee the Department of Revenue is required to issue subpoenas to compel the attendance of the arresting officer and notary public at the suspension hearing to verify the report was sworn to as required by 8-1001 to establish that the Department of Revenue has jurisdiction to conduct the license suspension hearing. Where the validity of the verification is not challenged, however, a report which states on its face it is sworn to is considered valid and creates the presumption that the refusal to take the chemical test was unreasonable." 234 Kan. at 245.

The court also found merit to Wulfkuhle's claim the department's refusal to issue the subpoenas violated his constitutional right to examine his accusers *on the issue of the reasonableness of his refusal to submit to the chemical test.* The court stated:

"The necessity of cross-examination of the arresting officer on the issue of

reasonableness of the refusal is readily apparent. *The officer's report itself, absent the officer's testimony, will ordinarily be the only evidence presented by the State to establish the unreasonableness of the refusal to take the chemical test.* The instant case demonstrates the filing of such a report creates a presumption that refusal to take the chemical test was unreasonable. The report contains three 'statements of fact' which do not deal with the 'reasonableness' of the refusal. The first states the officer had reasonable grounds to believe the person was operating a vehicle under the influence of alcohol. The second states the arrest was lawful and the person refused the test. The third states that, to the best of the officer's knowledge, the refusal was knowing, intelligent, free and voluntary. *Such a refusal could be either reasonable or unreasonable. Cross-examination might reveal the facts upon which the officer relied in making these statements of fact, and, in a given situation, these statements could be brought into serious doubt through cross-examination.* Without cross-examination, the hearing board has before it an unimpeachable report as evidence against the word of a self-interested licensee. The result is predictable. Furthermore, as heretofore discussed, absent cross-examination the report is accepted as being sworn to based on what appears on its face." (Emphasis added.) 234 Kan. at 247.

Lastly, the KDR contended the issuance of subpoenas was entirely discretionary. The court held that, even assuming that to be true, where a licensee requests the attendance of the arresting officer (or other relevant witnesses) to establish the validity of the verification of the refusal report or the reasonableness of the licensee's refusal to submit to the chemical test, the department's refusal to issue the subpoenas was an abuse of the agency's discretion. 234 Kan. at 248. The court then reversed the district court judgment which had upheld the department's refusal to issue the subpoenas requested by Wulfkuhle.

In *Illinois v. Batchelder,* 463 U.S. 1112, the issue was whether a police affidavit regarding an arrested driver's refusal to undergo breath analysis was constitutionally required to recite facts evidencing the driver's intoxication. The Illinois implied consent law (Ill. Ann. Stat., ch. 95-1/2, § 11-501.1 [Smith-Hurd, 1984 Supp.]) required that the arresting officer's sworn statement " 'shall include a statement that the arresting officer had reasonable cause to believe the person was driving the motor vehicle within this State while under the influence of intoxicating liquor. . . .' " *Batchelder,* 463 U.S. at 1113. The scope of the administrative hearings, however, was much broader than that in Kansas, including " 'the issues of whether the person was placed under arrest for [driving while intoxicated], *whether the arresting officer had reasonable grounds to believe that such person was driving while under the influence of intoxicating liquor,*

whether the person was informed orally and in writing . . . that his privilege to operate a motor vehicle would be suspended if he refused to submit to and complete the test and whether, after being so advised, he refused to submit and complete the test upon request of the officer.' " (Emphasis added.) The arresting officer's sworn statement at issue in the case read as follows:

" 'I hereby certify that I have placed the above named person under arrest, and that I had at the time of arrest reasonable grounds to believe that said person was driving a motor vehicle in this State while under the influence of intoxicating liquor in that: Traveling too fast in alley with pedestrians around, crossed Walnut w/o slowing, maintained speed behind Slipper Club then parked abruptly behind 519 SW Adams. I further certify that said person did willfully refuse to submit to the breath analyses when requested to do so in accordance with Section 11-501.1 of the Illinois Vehicle Code, after being informed of the possible consequences of his or her refusal.' " 463 U.S. at 1114-15.

At Batchelder's administrative hearing the judge denied the State's request for suspension of his license after finding the affidavit did not state any facts showing that respondent was under the influence of intoxicating liquor at the time of arrest. The Illinois Appellate Court agreed, concluding that, although the affidavit literally complied with the requirements of the state statute, under the Fourth and Fourteenth Amendments to the United States Constitution the arresting officer also must set out in his report " 'the underlying circumstances which provided him with a reasonable belief that the arrested person was driving under the influence of intoxicating liquor.' " 463 U.S. at 1116.

In a per curiam opinion the Supreme Court began its analysis by noting under *Mackey v. Montrym*, 443 U.S. 1, 61 L.Ed.2d 321, 99 S.Ct. 2612 (1979), the suspension of a driver's license for statutorily defined cause implicates a protectable property interest. The question that arises in cases of this type is " 'what process is due to protect against an erroneous deprivation of that interest.' " 463 U.S. at 1116-17. In a footnote the Supreme Court then said:

"The [Illinois] Appellate Court purported to rely on the Fourth, as well as the Fourteenth, Amendment. *To the extent that there are Fourth Amendment interests at stake here,* see Delaware v. Prouse, 440 US 648, 662-663, 59 L.Ed.2d 660, 99 S.Ct. 1391 (1979), *they are amply protected so long as the officer who arrested respondent had 'at least articulable and reasonable suspicion that [respondent was] subject to seizure for violation of law . . . .'* Id., at 663, 59 L.Ed.2d 660, 99 S.Ct. 1391. *That fact would be determined at the hearing*

*provided for under ¶ 11-501.1(d).* The logical thrust of the Appellate Court's opinion is that respondent was somehow denied due process because the arresting officer's affidavit did not specify the grounds which led him to believe that respondent was driving under the influence of alcohol. We thus treat the Appellate Court's opinion as resting exclusively on due process grounds." (Emphasis added.) 463 U.S. at 1117, n.3.

It is obvious that under the controlling Illinois statute, at least as interpreted by the United States Supreme Court, a full hearing was contemplated on several issues with testimony from the arresting officer. The Court concluded:

"Accordingly, we conclude that the Constitution does not require arresting officers in Illinois, in enforcing that state's implied consent statute, to recite in an affidavit the specific and concrete evidentiary matters constituting 'the underlying circumstances which provided him with a reasonable belief that the arrested person was driving under the influence of intoxicating liquor.' 107 Ill. App. at 84, 437 N.E.2d at 367. The driver's right to a hearing *before* he may be deprived of his license for failing to submit to a breath-analysis test accords him all, and probably more, of the process than the Federal Constitution assures." 463 U.S. at 1119.

A close examination of *Wulfkuhle* and *Batchelder* reveals that they do not support the department's present contention the affidavits at issue are sufficient in themselves to permit suspension of an arrested driver's license. The appellees acknowledge that the affidavits per se are sufficient to commence the K.S.A. 8-1001(c) administrative proceedings and we agree. In *Wulfkuhle* we stated that the filing of the affidavit creates a presumption that refusal to take the chemical test was unreasonable (234 Kan. at 247), and adequate grounds for license suspension under the statute. However, as appellees point out, the *constitutional* and *factual* sufficiency of the affidavit was not decided in *Wulfkuhle*. Their contention is not that the department can't begin its administrative proceedings on the basis of the officers' affidavits, but that the department can't rest its ultimate conclusion to suspend a license solely on these same affidavits because *the reports do not contain the facts showing the arresting officer had reasonable grounds under the Fourth Amendment to believe that prior to arrest the driver was operating his vehicle under the influence of alcohol.* Because of the much broader scope of the Illinois administrative hearings, the *Batchelder* case offers the department no relief from appellees' claims. The Supreme Court held that the Fourth Amendment interests at stake in *Batchelder* were "amply protected so long as the officer

who arrested respondent had 'at least articulable and reasonable suspicion that [respondent was] subject to seizure for violation of law . . . . *That fact would be determined at the hearing provided for . . .*" (Emphasis added.) 463 U.S. at 1117, n.3. In contrast to this procedural protection afforded Batchelder under Illinois law, which obviously contemplates the officer will *articulate* the facts at the administrative hearing supporting his actions and the arrest, appellees have no similar protection under Kansas law. Our administrative hearings concern one issue only: the reasonableness of the failure to submit to the test.

Neither does *Wulfkuhle* give the KDR any great support. As stated in the opinion, the officer's affidavit contains three "statements of fact":

"The first states the officer had reasonable grounds to believe the person was operating a vehicle under the influence of alcohol. The second states the arrest was lawful and the person refused the test. The third states that, to the best of the officer's knowledge, the refusal was knowing, intelligent, free and voluntary." 234 Kan. at 247.

Whether these three "statements of fact" are considered conclusions or opinions of the officer or statements of an ultimate fact, it is clear that there is nothing in the affidavit to support, or which forms any basis for, the so-called ultimate facts. The court pointed out that any refusal to take the test, under the limited facts of the affidavit, could be either reasonable or unreasonable depending on the underlying, supporting facts and that such could only be determined through cross-examination. Therefore, we conclude that when placed in issue, the officer's affidavit, per se, is insufficient to support the suspension of a person's driving privileges and fails to meet the constitutional requirements of due process of law or the right of confrontation and cross-examination.

However, in our opinion, the deficiency can be readily corrected without the necessity of requiring the physical presence of the officer at every administrative hearing held pursuant to K.S.A. 8-1001. We recognize that to require the officer's presence at every hearing would not only be an unreasonable expense to the taxpayers but, in many cases, would be totally unnecessary and an unreasonable burden upon both law enforcement officials and the KDR. It is common knowledge that in many, if not most, of the cases the objective sought at the hearing is not a determi-

nation of the reasonableness or unreasonableness of the refusal but an opportunity to seek leniency through evidence of mitigating circumstances and hardships which might convince the hearing officer that a minimum suspension is justified. In such cases the presence of the arresting officer is neither desired by the licensee nor required other than to meet the constitutional limitations of the affidavit. We recommend that the KDR and the law enforcement officials alter their procedures so the driver is informed at the outset of the operating or underlying facts supporting the probable cause for and the legality of the arrest and those facts supporting the officer's conclusion or ultimate statement of fact that the refusal to take the test was unreasonable. An affidavit similar to that used in the State of Illinois and as described in *Batchelder* would satisfy constitutional due process requirements assuming the underlying facts are sufficiently set forth and a copy of the affidavit is furnished to the licensee.

As we understand the record in these cases, it was the policy of the KDR to rely on the conclusionary affidavit of the police officer and, if the licensee presented testimony or evidence at the administrative hearing which might support the licensee's contention that the refusal to take the test was reasonable, then the hearing officer continued the hearing to a later date and required the arresting officer, and perhaps other witnesses, to appear to rebut the licensee's position. Such a procedure is not only duplicative but an undue burden upon the taxpaying public, the hearing officer and the licensee. The additional inconvenience and expense to all parties does not justify such a procedure except in unusual or unexpected situations. If the officer's affidavit contains the necessary factual background to support the three "statements of fact" recognized in *Wulfkuhle* and if the licensee is advised that such affidavit will be taken as true, federal and state due process of law requirements will be adequately met and the affidavit itself will be sufficient to constitute a prima facie case. The burden of proving those alleged facts false or insufficient will then be upon the licensee and if he intends to offer evidence to that effect he must so advise the KDR in sufficient time for it to subpoena the officer or other witnesses. Such a requirement places no unreasonable burden upon the licensee and gives the KDR the opportunity to determine whether to call witnesses in support of its position or

whether to rely upon the affidavit. Such a procedure should in most cases avoid the added expense and inconvenience to all parties occasioned by a second hearing and will avoid the calling of unnecessary witnesses. Of course, if the licensee requests the presence of the officer, or any other relevant witnesses, subpoenas are required to be issued for them. *State v. Wulfkuhle,* 234 Kan. 241. In the absence of notice to the KDR that the licensee intends to offer evidence in opposition to the officer's affidavit, the constitutional right of confrontation may be deemed waived. *Crane v. Mitchell County U.S.D. No. 273,* 232 Kan. 51, 64, 652 P.2d 205 (1982).

Finally, the KDR argues that appellees waived their rights to confrontation and cross-examination by not requesting that the arresting officers be subpoenaed. It is clear from the record that in 1982 subpoenas would have been denied even if requested. The appellees were not required to perform what was obviously a useless act as it was KDR policy to refuse to subpoena the arresting officer and to rely solely on the affidavit. In addition, until our decision in *Wulfkuhle* there was no clear cut right to have the officer present and, under such circumstances, no waiver can be said to have occurred.

The decision rendered herein shall not be deemed retroactive but shall apply to these cases and to future proceedings before the KDR based upon arrests occurring from and after the time the mandate in this case is filed in the district court.

The judgments of the district court are affirmed as modified herein and the cases remanded with directions to remand the cases to the KDR for further administrative proceedings consistent with the views expressed herein.

PRAGER, J., not participating.