No. 58,057

DOROTHY M. BARNES, *Appellee*, v. KANSAS DEPARTMENT OF
REVENUE, DIVISION OF VEHICLES, *Appellant.*

(714 P.2d 975)

Opinion filed
February 21, 1986.

*Ann L. Smith*, of the Kansas Department of Revenue, argued the cause, and *William L. Edds*, general counsel, and *Kris E. McKinney*, of the Kansas Department of Revenue, were on the brief for appellant.

*Michael H. Morgan*, of the Legal Aid Society of Wichita, Inc., argued the cause, and *Alice Leslie Rawlings*, of Wichita, was with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: The Kansas Department of Revenue (KDOR) appeals from a judgment of the district court holding K.S.A. 1983 Supp. 40-3104 unconstitutional for failing to provide due process of law under the Fourteenth Amendment to the United States Constitution.

The facts are not in dispute and are summarized as follows. Dorothy M. Barnes possessed a valid driver's license on July 6, 1983, the date an automobile owned by her was involved in an

accident. Ms. Barnes had no automobile liability insurance policy in effect at the time of the accident. On September 16, 1983, an administrative hearing was held by a representative of KDOR pursuant to K.S.A. 1983 Supp. 40-3118(d). The KDOR representative entered the following order:

"The respondent has failed to show evidence that an owned vehicle was insured on the date it was involved in an accident.

"The vehicle registration and driving privileges shall be suspended until: (1) proof of current liability insurance, (2) a release of liability, or evidence that an agreement for payment of damages has been entered into, or evidence that the respondent has been finally adjudicated not [to] be liable in respect to such accident, and (3) payment of the appropriate reinstatement fee, have been furnished to the Director, Division of Vehicles.

"The appropriate reinstatement fee is $25.00."

On November 15, 1983, Ms. Barnes brought this action seeking, *inter alia*, a stay on the suspension order and reinstatement of her driver's license and automobile registration. Particularly, she challenged on due process grounds the constitutionality of K.S.A. 1983 Supp. 40-3104. In support of her due process challenge, Ms. Barnes relies on *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971). The trial court, in reliance on the *Bell* case, held K.S.A. 1983 Supp. 40-3104 was unconstitutional as it violated the due process requirements of the Fourteenth Amendment to the United States Constitution and ordered Ms. Barnes' driving privileges and registration reinstated upon "the demonstration of financial security and the payment of the reinstatement fee." KDOR appeals from said judgment.

K.S.A. 1983 Supp. 40-3104 is a part of the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.* The KAIRA was originally enacted in 1973 and has been repeatedly amended since its adoption. Although 1984 and 1985 amendments do not materially affect the issue before us, in this opinion we shall use the version of the Act contained in the 1983 supplement to volume 3A of Kansas Statutes Annotated which was in effect at the time.

The statute held to be unconstitutional is K.S.A. 1983 Supp. 40-3104, which provides:

"(a) Every owner shall provide motor vehicle liability insurance coverage in accordance with the provisions of this act for every motor vehicle owned by such person, unless such motor vehicle is included under an approved self-insurance plan as provided in subsection (d) or is expressly exempted from the provisions of this act.

"(b) An owner of an uninsured motor vehicle shall not permit the operation thereof upon a highway or upon property open to use by the public, unless such motor vehicle is expressly exempted from the provisions of this act.

"(c) No person shall knowingly drive an uninsured motor vehicle upon a highway or upon property open to use by the public, unless such motor vehicle is expressly exempted from the provisions of this act.

"(d) Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance from the commissioner of insurance. Upon application of any such person, the commissioner of insurance may issue a certificate of self-insurance, if the commissioner is satisfied that such person is possessed and will continue to be possessed of ability to pay any judgment obtained against such person arising out of the ownership, operation, maintenance or use of any motor vehicle registered in such person's name.

"Upon not less than five days' notice and a hearing pursuant to such notice, the commissioner of insurance may cancel a certificate of self-insurance upon reasonable grounds. Failure to pay any judgment against a self-insurer, arising out of the ownership, operation, maintenance or use of a motor vehicle registered in such self-insurer's name, within 30 days after such judgment shall have become final, shall constitute reasonable grounds for cancellation of a certificate of self-insurance.

"(e) Any person violating any provision of this section shall be guilty of a class B misdemeanor, except that any person convicted of violating any provision of this section within three years of any such prior conviction shall be guilty of a class A misdemeanor.

"(f) In addition to any other penalities provided by this act for failure to have or maintain financial security in effect, the director, upon receipt of the accident report required by K.S.A. 8-1607, shall, upon notice and hearing as provided by K.S.A. 40-3118, and amendments thereto, suspend:

"(1) The license of each driver in any manner involved in the accident;

"(2) the license of the owner of each motor vehicle involved in such accident, unless the vehicle was stolen at the time of the accident;

"(3) the registrations of all vehicles owned by the owner of each motor vehicle involved in such accident;

"(4) if the driver is a nonresident, the privilege of operating a motor vehicle within this state;

"(5) if such owner is a nonresident, the privilege of such owner to operate or permit the operation within this state of any motor vehicle owned by such owner.

"(g) The suspension requirements in subsection (f) shall not apply:

"(1) To the driver or owner if the owner had in effect at the time of the accident an automobile liability policy as required by K.S.A. 40-3107, and any amendments thereto, with respect to the vehicle involved in the accident;

"(2) to the driver, if not the owner of the vehicle involved in the accident, if there was in effect at the time of the accident an automobile liability policy with respect to such driver's driving of vehicles not owned by such driver;

"(3) to any person qualified as a self-insurer under subsection (d) of this section;

"(4) to any person who has been released from liability, has entered into an

agreement for the payment of damages, or has been finally adjudicated not to be liable in respect to such accident. Evidence of any such fact may be filed with the director;

"(5) to the driver or owner of any vehicle involved in the accident which was exempt from the provisions of this act pursuant to K.S.A. 40-3105.

"(h) For the purposes of provisions (1) and (2) of subsection (g) of this section, the director may require verification by an owner's or driver's insurance company or agent thereof, that there was in effect at the time of the accident an automobile liability policy as required in this act.

"Any suspension effected hereunder shall remain in effect until satisfactory proof of financial security has been filed with the director and such person has met the requirements under subsection (g) and has paid the reinstatement fee herein prescribed. Such reinstatement fee shall be in the amount of $25 except that if the registration of a motor vehicle of any owner is suspended within one year following a prior suspension of the registration of a motor vehicle of such owner under the provisions of this act such fee shall be in the amount of $75."

The district court, after holding the entire statute (K.S.A. 1983 Supp. 40-3104) unconstitutional, ordered:

"Plaintiff should have her driving privileges and registration reinstated upon the demonstration of financial security and the payment of the reinstatement fee."

The result is that the district court applied a portion of the statute it had just invalidated by imposing restrictions on the reinstatement. This points out a threshold problem inherent in the district court's resolution of the issues. Plaintiff's constitutional challenge to K.S.A. 1983 Supp. 40-3104 was not a broadside attack on the entire statute. Rather, only section (g)(4) of the statute was challenged as failing to meet due process requirements.

K.S.A. 40-3121, applicable to 40-3104, provides:

"If any provisions of this act, or the application thereof to any person or circumstance, is held unconstitutional, the remainder of this act and the application of such provision to other persons or circumstances shall not be affected thereby; and it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional provision: *Provided,* That K.S.A. 40-3117 is expressly declared to be nonseverable."

K.S.A. 1983 Supp. 40-3104(g)(4) is an *exception* to the mandatory suspension requirements of earlier sections of the statute and is clearly severable under K.S.A. 40-3121. Hence, if section (g)(4) is held to be unconstitutional, the result is KDOR still is mandated by the statute to suspend plaintiff's license and registration. As a practical matter, it is rather self-defeating to seek destruction of the exemption one is trying to come within, but

the issue of the validity of K.S.A. 1983 Supp. 40-3104(g)(4) is before us and we shall proceed to determine it.

Before turning to the issue, however, certain basic principles should be stated. In *State v. Huffman,* 228 Kan. 186, Syl. ¶ 1, 612 P.2d 630 (1980), we held:

"This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

In addition, it should also be noted that deprivation of a driver's license by the State constitutes a deprivation of property sufficient to necessitate application of the due process clause. *Mackey v. Montrym,* 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979); *Dixon v. Love,* 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977); *Carson v. Division of Vehicles,* 237 Kan. 166, 699 P.2d 447 (1985). The constitutional guarantee of procedural due process has always been understood to embody a presumptive requirement of notice and a meaningful opportunity to be heard, except in emergency situations, *before* the State acts finally to deprive a person of his property. *Mackey v. Montrym,* 443 U.S. 1; *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *State v. Durst,* 235 Kan. 62, 678 P.2d 1126 (1984).

The trial court in its determination relied upon *Bell v. Burson,* 402 U.S. 535, in finding the statute defective for failure to provide any hearing to determine if there was "a reasonable possibility of a judgment being rendered against [Dorothy M. Barnes] as a result of the accident." KDOR argues *Bell* involved a financial responsibility act as opposed to a compulsory insurance act and, hence, *Bell* is not controlling. We must examine *Bell* in some detail.

The Georgia Motor Vehicle Safety Responsibility Act involved in *Bell* required any person involved in a motor vehicle accident to submit a report to the Director of Public Safety. Within 30 days after receipt of such a report, the Director was required to suspend licenses and registration certificates of all operators and owners of vehicles involved unless such owner or driver filed proof of financial responsibility—namely evidence of liability insurance in force at the time of the accident or the posting of

security to cover the amount of damages claimed by aggrieved parties in reports of the accident. The administrative hearing conducted prior to suspension excluded consideration of the owner's or driver's fault or liability for the accident.

Bell was a clergyman whose ministry required him to travel by car to rural Georgia communities. One day a five-year-old girl rode her bicycle into the side of the clergyman's car. The child's parents filed an accident report indicating $5,000 in damages. The Director informed Bell that unless he was covered by liability insurance in effect at the time of the accident, he must file a bond or cash security deposit of $5,000 or present a notarized release from liability, plus proof of future financial responsibility, or suffer the suspension of his driver's license and vehicle registration. Bell requested an administrative hearing before the Director asserting that he was not liable as the accident was unavoidable, and stating also that he would be severely handicapped in the performance of his ministerial duties by a suspension of his licenses. A hearing was scheduled but the Director informed petitioner that " '[t]he only evidence that the Department can accept and consider is: (a) was the petitioner or his vehicle involved in the accident; (b) has petitioner complied with the provisions of the Law as provided; or (c) does petitioner come within any of the exceptions of the Law.' " 402 U.S. at 537-38 At the administrative hearing the Director rejected petitioner's proffer of evidence on liability, ascertained that petitioner was not within any of the statutory exceptions, and gave petitioner 30 days to comply with the security requirements or suffer suspension.

In holding the Georgia Financial Responsibility Act violative of due process requirements, the United States Supreme Court reasoned:

"If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment. [Citations omitted.] It does not follow, however, that the amendment also permits the Georgia statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss of the licenses. [Citations omitted.] Once licenses are issued, as in petitioner's case, . . . the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. [Citations omitted.] This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitle-

ment whether the entitlement is denominated a 'right' or a 'privilege'. [Citations omitted.]

". . . Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee.

"The State argues that the licensee's interest in avoiding the suspension of his licenses is outweighed by countervailing governmental interests and therefore that this procedural due process need not be afforded him. We disagree. In cases where there is no reasonable possibility of a judgment being rendered against a licensee, Georgia's interest in protecting a claimant from the possibility of an unrecoverable judgment is not, within the context of the State's fault-oriented scheme, a justification for denying the process due its citizens. . . .

"The main thrust of Georgia's argument is that it need not provide a hearing on liability because fault and liability are irrelevant to the statutory scheme. We may assume that were this so, the prior administrative hearing presently provided by the State would be 'appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 [, 94 L. Ed. 865, 872, 70 S. Ct. 652] (1950). But '[i]n reviewing state action in this area . . . we look to substance, not to bare form, to determine whether constitutional minimums have been honored.' [Citation omitted.] And looking to the operation of the State's statutory scheme, it is clear that liability, in the sense of an ultimate judicial determination of responsibility, plays a crucial role in the Safety Responsibility Act. If prior to suspension there is a release from liability executed by the injured party, no suspension is worked by the Act. Ga. Code Ann. § 92A-606 (1958). The same is true if prior to suspension there is an adjudication of nonliability. *Ibid.* Even after suspension has been declared, a release from liability or an adjudication of nonliability will lift the suspension. Ga. Code Ann. § 92A-607 (Supp. 1970). Moreover, other of the Act's exceptions are developed around liability-related concepts. Thus, we are not dealing here with a no-fault scheme. Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing.

. . . .

"We hold, then, that under Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident. We deem it inappropriate in this case to do more than lay down this requirement. The alternative methods of compliance are several. Georgia may decide merely to include consideration of the question at the administrative hearing now provided, or it may elect to postpone such a consideration to the *de novo* judicial proceedings in the Superior Court. Georgia may decide to withhold suspension until adjudication of an action for damages brought by the injured party. *Indeed, Georgia may elect to abandon its present scheme completely and pursue one of the various alternatives in force in other States.* Finally, Georgia may reject all of the above and devise an entirely new regulatory scheme. The area of choice is wide: we hold only that the failure of the present Georgia

scheme to afford the petitioner a prior hearing on liability of the nature we have defined denied him procedural due process in violation of the Fourteenth Amendment." 402 U.S. at 539-43. (Emphasis supplied.)

In a footnote relative to various acceptable alternatives, the Supreme Court stated:

"*The various alternatives include compulsory insurance plans,* public or joint public-private unsatisfied judgment funds, and assigned claims plans." 402 U.S. at 543 n. 6. (Emphasis supplied.)

K.S.A. 1983 Supp. 40-3104(g)(4) is a part of the Kansas Automobile Injury Reparations Act. The purpose of the act is set forth in K.S.A. 40-3102 as follows:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."

The KAIRA is a compulsory insurance act applicable to all motorists and mandates certain minimum insurance coverage of all vehicles operated in the state, including personal injury protection (PIP) benefits.

The Georgia Act before the United States Supreme Court in *Bell* was a financial security act requiring evidence of financial security (applicable insurance or the posting of security) only in the event of an accident. The Kansas Act is a compulsory insurance law. It is a crime under the Act to operate or permit an uninsured vehicle to be operated on the highways of Kansas regardless of whether or not an accident occurs. An owner's license may be revoked and registration may be suspended under 40-3118 (the section of the Act dealing with registration of motor vehicles) upon a showing of failure to maintain continuing insurance without any accident having occurred.

The United States Supreme Court in the *Bell* opinion recognized Georgia had choices in correcting the due process deficiency in its financial responsibility act—it could provide for a fault determination at its suspension hearing or go to an entirely different type of law such as a "compulsory insurance plan." To iterate, the Kansas Act is not a financial responsibility act—it is a compulsory insurance act.

We do not believe *Bell v. Burson,* 402 U.S. 535, is controlling on the issue before us. Kansas, unlike Georgia, required the motorist to have automobile insurance on his or her vehicle

before operating or permitting the vehicle to be operated on the highways of Kansas. Violation of the compulsory insurance law subjects the vehicle's owner to suspension of his or her driver's license, revocation of registration and criminal sanctions whether or not an accident has occurred.

We conclude K.S.A. 1983 Supp. 40-3104(g)(4) is not violative of the due process requirements of the Fourteenth Amendment to the United States Constitution.

The judgment of the district court is reversed.

HOLMES, J., dissenting: The majority, while quoting nearly the entire text of the opinion in *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971), has apparently neglected to carefully consider the actual holding in the case.

The Supreme Court in *Bell* rejected Georgia's argument that the individual's interest in avoiding suspension of his license was subordinate to the government's interest in protecting a claimant from the potential of an unrecoverable judgment. The court examined the statutory scheme in Georgia and concluded that liability played an important role, since obtaining a release, entering into an agreement to pay damages, or being adjudicated not liable prior to suspension would prevent the loss of the license altogether. Further, the court noted that after suspension had been declared, a release from liability, an agreement to pay damages or an adjudication of non-liability would lift the suspension. In conclusion, the court stated that the Georgia procedure fell short of providing a hearing which was "meaningful" and "appropriate to the nature of the case." 402 U.S. at 541-42. The court held that before the State could deprive Bell of his driver's license and vehicle registration, a hearing must be conducted to determine whether there was a reasonable possibility of a judgment being rendered against the owner as a result of the accident.

In my view the key to proper resolution of this case is contained in the fourth paragraph of the majority's quotation from *Bell*:

"Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing." 402 U.S. at 541.

The similarity between the provisions of the Georgia act found

constitutionally lacking by the Supreme Court and our act are obvious. (In referring to the applicable Kansas statutes, reference will be made to the 1983 Supplement to K.S.A. as was done by the majority.) K.S.A. 1983 Supp. 40-3104(g)(4) is clearly a provision to secure payment, absent an adjudication of non-liability, to an alleged victim of an uninsured owner even though subsection (f) refers to the suspension as an additional penalty for those involved in accidents. If the legislature was interested solely in penalties for failure to comply with the act and with its enforcement, K.S.A. 1983 Supp. 40-3104(e), making any violation a crime, and K.S.A. 1983 Supp. 40-3118 would appear adequate without the fault-related provisions of K.S.A. 1983 Supp. 40-3104(g). It should be noted the hearing provided by K.S.A. 1983 Supp. 40-3118(d) is not limited to suspensions resulting from accidents but also applies to those situations which come to the attention of the Kansas Department of Revenue (KDOR) as a result of traffic violations not involving accidents, through the spot check procedure of K.S.A. 1983 Supp. 40-3118(c) or through any other means. The hearing, however, is limited to whether the owner had "continuous financial security" including at the time of the accident, if any, and if there was not such continuous financial security, whether the failure was due to a cause beyond the reasonable control of the owner. Fault or potential liability is not considered at the KDOR hearing. The Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, although commonly referred to as the Kansas no-fault insurance law (*Manzanares v. Bell*, 214 Kan. 589, 591, 522 P.2d 1291 [1974]), is actually a combination of no-fault insurance provisions, compulsory liability insurance requirements, and traditional financial responsibility statutes. See 7 Am. Jur. 2d, Automobile Insurance § 341. The statutes of the various states relative to financial responsibility and compulsory liability insurance do not reflect any great degree of uniformity and cases from other jurisdictions must be read in light of the particular statutes involved. Here, for an uninsured motor vehicle owner, whose automobile is involved in an accident, to retain his driver's license and automobile registration he must obtain a release from other parties involved in the accident, or enter into an agreement to pay damages, or be found not liable in a judicial proceeding even

though the owner was not involved in the accident and even in situations where liability is nonexistent.

Plaintiff demonstrates the extreme harshness of our statute with several examples wherein the possibility of ever again being licensed to drive or authorized to own a motor vehicle is remote if not precluded. Consider an uninsured motorist whose automobile is rear-ended, or worse yet, whose legally parked vehicle is hit by a hit-and-run driver who is never apprehended; an uninjured passenger, who is a foreign student, involved in an accident in an uninsured vehicle, who leaves this country never to be heard from again; a friend or family member who, without permission, borrows the uninsured owner's car, and without fault, is involved in an automobile accident; or the case where an uninjured passenger demands a cash payment for a release of the uninsured owner. Such cases, while admittedly extreme, are not beyond the realm of possibility and the uninsured owner is without any practical remedy even when no fault whatsoever exists. The majority would contend such examples show our statute is not fault-related as was the Georgia statute in *Bell*. However, the application of our statute is the same as in *Bell*, although more severe. To avoid suspension of driving privileges and registration the uninsured owner must obtain a release from other parties, agree to pay damages or be found not liable after usually lengthy and costly judicial proceedings. Thus, the heart of K.S.A. 1983 Supp. 40-3104(g)(4) is fault-related, presumes fault by the uninsured motorist and places the burden upon him to obtain evidence of lack of fault through one of the alternatives in the statute. If our statute was not fault-related then there would be no justifiable reason for an adjudication of nonliability resulting in no suspension.

Compulsory insurance laws were first enacted by Massachusetts in 1927. Keeton & O'Connell, Basic Protection for the Traffic Victim, p. 76 (1965). The concept requires that an automobile be covered by liability insurance or an approved substitute in order to be registered in the state. 7 Am. Jur. 2d, Automobile Insurance § 20. Under what is commonly referred to as a financial responsibility law, a motorist is not required to carry liability insurance until he is involved in an accident which causes personal injury or property damage, or is convicted of a serious driving violation. Keeton & O'Connell, p. 103. Upon such an occurrence, he is then required to file proof of financial

responsibility to pay for damages arising out of future accidents. Additionally, the statutes may provide that security be posted for any liability arising out of the accident that invoked the law. As previously pointed out the KAIRA includes provisions of both types of laws as did its predecessor, the motor vehicle safety responsibility act, K.S.A. 8-722 *et seq.* (Corrick). The determination of a person's due process rights cannot hinge upon what title or designation may be given to a particular act. Unless there are relevant and fundamental distinctions which apply to the suspension of licenses and registrations under the Georgia "financial responsibility" act and our "no-fault or compulsory insurance" act, other than the titles, the due process requirements of *Bell* apply equally to both types of acts.

The majority decision to reverse the judgment of the district court is, of course, the easy choice. It is much easier to hold that *Bell* has specifically approved compulsory insurance acts as an alternative to the Georgia-type statutes, than to carefully examine the true nature of the holding in *Bell* and our law. The dicta in *Bell*, 402 U.S. at 543, footnote 6, that compulsory insurance is one acceptable alternative to Georgia's financial responsibility law certainly was not intended to, and did not, give carte blanche to the states to establish such a plan with no due process considerations. The rule laid down in *Bell* is equally applicable to the deprivations of driver's licenses and registrations whether the statutes involved are called financial responsibility laws, no-fault insurance laws, compulsory liability insurance laws or are given some other vague descriptive title. Due process of law is required regardless of what we call the particular act in question. As stated in *Bell*, " 'we look to substance, not to bare form, to determine whether constitutional minimums have been honored.' " 402 U.S. at 541. *Bell* held that due to the fault-related provisions of the Georgia statute, the hearing must address the issue of fault in order to provide due process. We can do no less. K.S.A. 1983 Supp. 40-3104(g)(4), being grounded in fault, is subject to the rule laid down in *Bell* and the fact that our act may be denominated a compulsory insurance act does not eliminate the need for compliance with the requirement of due process. It has been stated:

"The general rule is that in whatever language a statute may be framed, its purpose and its constitutional validity must be determined by its natural and

reasonable effect. The constitutionality of an act depends on its real character and on the end designed to be accomplished rather than on its title or the professions as to its purpose which may be contained in it, and therefore such declarations do not conclude the court, no matter how praiseworthy the declared purpose may be." 16 Am. Jur. 2d, Constitutional Law § 226, pp. 660-61.

While I agree there are significant differences between the Georgia and Kansas acts, those differences are not found in the relevant sections now under examination.

In *Popp v. Motor Vehicle Department*, 211 Kan. 763, 508 P.2d 991 (1973), we considered the application of *Bell* in a different setting involving the suspension of a driver's license for refusal of the driver to submit to a "breathalyzer" test under the drunk driving statutes. In discussing *Bell*, Justice (now Chief Justice) Schroeder stated:

"We do not think [*Bell v.*] *Burson* has application here. A suspension under the Safety Responsibility Act is different than a suspension under K.S.A. 8-1001. Logically, *to suspend a person's license who has been involved in a motor vehicle accident for failure to post security to cover the amount of damages claimed by another party involved in the accident, prior to affording the opportunity for an administrative hearing to determine reasonable possibility of a judgment being rendered against him, is rather tenuous.*" p. 765. (Emphasis added.)

The majority, while apparently acknowledging that liability was crucial to the Georgia financial responsibility law, chooses to ignore the similar provisions and results of the Kansas act. The majority would appear to believe that liability is but one small part of the Kansas law even though the uninsured motorist is presumed to be at fault until he proves otherwise. To deny that the provisions of K.S.A. 1983 Supp. 40-3104(g)(4) are directed at the satisfaction of claims arising from an accident appears to ignore the statute's plain terms. If fault is not a consideration, then reinstatement should be available to an uninsured motorist who is involved in an accident just as it is available to any other motorist who is discovered to be uninsured. If fault is a consideration, then *Bell* is controlling.

The Georgia statute which was found unconstitutional in *Bell* also assumed the existence of liability and required the posting of security sufficient to meet any alleged claim, a release, an agreement to pay damages, or a final adjudication of nonliability. Under the Kansas statute the suspected uninsured motorist is entitled to a pre-suspension hearing; however, the inquiry at the hearing is confined to whether the motorist possessed effective

insurance at the time of the accident and, if not, the motorist must present a release, show an agreement to pay damages, or prove nonliability in court. In *Bell* the motorist was also provided a hearing which was confined to whether the motorist could provide the required security under the financial responsibility law to m)et any alleged claim. A negative finding at the hearing conducted under the former Georgia statute or the present Kansas statute prompted the suspension of the motorist's driver's license and automobile registration. Further, it appears that both in Georgia and in Kansas, review of the administrative tribunal's finding was available in the district court. However, in both settings the reviewing court was restricted to the issue addressed in the administrative hearing. In Kansas the issue considered at the administrative hearing is whether the owner had insurance at the time of the accident or, if not, whether the failure was due to a cause beyond the reasonable control of the owner. Therefore, on appeal the determination of liability is not an issue before the district court. *Bell* involved action by the state in summarily assuming the existence of fault and, based thereon, suspending a motorist's driver's license and registration in the event he was unable to post security to satisfy the summary determination. Here, the uninsured owner is assumed to be at fault under the KAIRA. By failing to allow the owner to present evidence at the hearing on the issue of fault, prior to suspension, he is denied due process of law under the Kansas and United States Constitutions. The factual distinctions between *Bell* and the present case urged by the majority are not persuasive. To suspend licenses and registrations under K.S.A. 1983 Supp. 40-3104(g)(4), without a hearing conforming to the mandates of *Bell*, is not only "rather tenuous," as pointed out in *Popp v. Motor Vehicle Department*, 211 Kan. at 765, but unconstitutional as a denial of due process under the Fourteenth Amendment as interpreted and applied in *Bell*. Numerous jurisdictions have addressed the issue since the decision in *Bell* in a variety of factual situations and under a variety of statutes. See Annot., 60 A.L.R. 3d 361 and supplement. Further examination of specific cases would serve no useful purpose in view of the differing statutory provisions from state to state.

The majority opinion may be perceived by some to reach a "better" result by possibly encouraging greater compliance with

our mandatory insurance requirement. It may be comforting to envision this decision as furthering the goals of a more compassionate and responsible society. However, while such observations may have merit, they are goals which are proper only for the legislature. It must be continually reemphasized that this court exists to pass upon the constitutionality of enacted laws, not to write them.

Under the KAIRA, before the KDOR may suspend the driver's license and automobile registration of the owner of an uninsured vehicle involved in an accident, procedural due process requires a determination whether there is a reasonable possibility of a judgment being rendered against the owner as a result of the accident. I would hold that K.S.A. 1983 Supp. 40-3104(g)(4), now K.S.A. 1985 Supp. 40-3104(i)(4), violates the due process of law clause of the Fourteenth Amendment to the United States Constitution and is void.

PRAGER and MILLER, JJ., join the foregoing dissenting opinion.