No. 94,013

BRYAN EUGENE KEMPKE, *Appellee,* v. KANSAS DEPARTMENT OF REVENUE, *Appellant.*

(133 P.3d 104)

Opinion filed May 5, 2006.

*James G. Keller*, of the Kansas Department of Revenue Legal Services Bureau, argued the cause and was on the briefs for appellant.

*Michael S. Holland, II*, of Holland and Holland, of Russell, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The Kansas Department of Revenue sought to suspend the driver's license of Bryan Eugene Kempke under the Kansas implied consent law, K.S.A. 8-1001 *et seq*. The Ellsworth

County District Court held that the statutory scheme of the Kansas implied consent law was unconstitutional as applied to Kempke in that the law denied Kempke of due process of law under the Fourteenth Amendment to the United States Constitution for the reason that he was not permitted to subpoena a relevant witness to testify at his administrative hearing. The Kansas Department of Revenue appealed. This appeal was transferred to this court on our own motion under K.S.A. 20-3018(c).

## FACTS

On November 23, 2003, Deputy James Tyree of the Ellsworth County Sheriff's Department stopped Bryan Kempke's vehicle for failing to have an illuminated license tag light. Before stopping the vehicle, Deputy Tyree observed no signs that Kempke's driving was impaired. After Kempke's vehicle was stopped, the deputy approached and saw that there were two occupants in the car. Both were under the age of 21.

According to Tyree, Kempke was lethargic and had slurred speech and watery, bloodshot eyes. The deputy thought Kempke appeared to be under the influence of alcohol and/or drugs. Deputy Tyree did not smell an odor of alcohol, but he saw what he thought was a bottle of alcohol under the passenger's leg. When the deputy returned to Kempke's vehicle after running driver's license checks, the bottle was hidden by a coat. When he asked about the bottle, the passenger initially denied its existence, but he subsequently produced the bottle. It was an open bottle of Lord Calvert whiskey. Deputy Tyree decided to investigate Kempke for driving under the influence (DUI) of alcohol.

Deputy Tyree requested assistance from Officer Lawrence of the Ellsworth Police Department, specifically asking him to bring a preliminary breath test machine to the scene. When Kempke and his passenger got out of the vehicle, Officer Lawrence performed a sweep of the two front seats and found a 12-ounce beer can in a blue "koozy." The can was still cold to the touch, and the beer was partially consumed. Upon exiting the vehicle, Kempke was unsteady, and he had to hold onto the vehicle to maintain his balance as he moved along the side of the vehicle. Deputy Tyree asked

Kempke to perform four field sobriety tests—the "walk and turn," the "one-leg stand," the "horizontal gaze nystagmus" (HGN), and the preliminary breath test (PBT). Kempke agreed only to take the HGN test and the PBT.

Officer Lawrence administered the PBT to Kempke, but Deputy Tyree was present during the test. The PBT confirmed that there was alcohol in Kempke's system; however, his level of breath alcohol concentration registered .05, which fell below the legal limit of .08. Kempke was placed under arrest for DUI, minor in possession of alcohol, and transporting an open container. Tyree took Kempke to the Ellsworth County Sheriff's Office. Ultimately, Kempke refused to submit to an evidentiary test for alcohol and/or drugs, and Deputy Tyree completed an "Officer's Certification and Notice of Suspension" (DC-27 form), certifying that Kempke refused a test. For some unknown reason, Officer Lawrence neither initialed nor signed the form. On Kempke's form, Deputy Tyree marked the boxes indicating that he had reasonable grounds to believe Kempke was under the influence of alcohol and/or drugs because (1) alcoholic beverage containers were found in the vehicle; (2) Kempke had slurred speech, bloodshot eyes, difficulty in communicating, and poor balance or coordination; and (3) Kempke failed the PBT. The certification form was served on Kempke by Deputy Tyree on November 23, 2003.

On the certification form, Tyree marked the box indicating that Kempke had valid driving privileges for 30 days. The reverse side of the form stated that a timely hearing request would result in Kempke's driving privileges being "extended until a final determination is made." On December 3, 2003, Kempke requested an administrative hearing. On December 5, 2003, the Kansas Department of Revenue (KDR) sent a letter to Kempke confirming receipt of his request for an administrative hearing and stating that his driving privileges would remain valid until after the hearing was conducted.

At the April 9, 2004, administrative hearing in Salina, Deputy Tyree was present and was examined by Kempke's attorney. No transcript of the hearing, however, was included in the record on appeal. Kempke was represented by counsel at the administrative

hearing, but he was not personally present. An administrative hearing order was issued on May 18, 2004, stating that Kempke's driving privileges would be suspended on the 30th day after the date of the hearing order "unless respondent files a timely petition for review with the district court and serves a copy of the petition upon the Secretary of Revenue."

Kempke filed a timely petition for review in the Ellsworth County District Court on May 24, 2004. He sought review of all issues raised before the administrative hearing officer, alleging that Deputy Tyree (1) lacked a reasonable suspicion to initiate the stop, (2) lacked probable cause to arrest him, and (3) lacked a reasonable suspicion to initiate a DUI investigation. In addition, Kempke alleged that K.S.A. 8-1001 *et seq.* denied him due process of law because the law denied him the right to subpoena other "relevant witnesses" to testify at his administrative hearing. Upon service of a copy of the petition for review, a letter was sent to Kempke, confirming that the Secretary of Revenue had received the petition for review and that Kempke's driving privileges had been "extended until the decision on your petition is final."

The district court held a trial de novo on October 21, 2004. Deputy Tyree was the only witness to testify at trial and was examined by both parties. Officer Lawrence was present and available for examination but was not called as a witness. After the examination of Tyree was complete, the KDR rested. The district court ruled against Kempke on all issues except one—the issue involving Kempke's due process rights. The court held: "[P]laintiff's due process rights were violated 'as applied,' under the current version of the Kansas Implied Consent Law" and did not address Kempke's facial attack. The district court concluded:

"The legal issue here really is whether or not the statute which prohibits the subpoenaing of witnesses to a due process hearing denies the plaintiff due process. And [Kempke's] position is that if it's a due process hearing, then by golly, you ought to be able to have a witness testify that you think can present relevant testimony. It doesn't take a huge imagination to be able to believe that there are factual scenarios that can be manufactured that would provide the existence of a witness whose testimony might completely clear or exonerate the person who has been arrested, but that witness is not able to be called by subpoena. The State's response is that the State of Kansas does not suspend your driver's license until

this multifaceted, many-stepped process is complete. And that the person is entitled to due process as an aggregate and not necessarily due process at each step or any particular step of the statutory procedure. . . . [I]t's pretty clear that the Department of Revenue and the Kansas legislature have attempted to chart a course of travel that was close to the constitutional limit of what constitutes due process. They want to sail as close to the edge of the world as they can without falling off. . . . I think that when you absolutely prohibit someone the right to call a witness that might completely exonerate them of the charges you have fallen off the edge."

The district court ordered that Kempke's suspension be vacated and his driving privileges be reinstated.

The KDR filed a motion to alter or amend, arguing that Kempke's rights were protected by the automatic extension of his driving privileges while he sought judicial review, which included the right to a full trial de novo without the limitations on witnesses or evidence imposed by K.S.A. 8-1020(g) and (l). The KDR pointed out that, at the administrative hearing stage, a plaintiff has not yet been deprived of any rights or privileges. The KDR contended that, before Kempke was ever deprived of driving privileges, he first had the opportunity to subpoena witnesses and introduce evidence in a de novo trial before the district court; therefore, Kempke's due process rights were not violated. The motion was denied.

## IS THE KANSAS IMPLIED CONSENT LAW, K.S.A. 8-1001 et seq., UNCONSTITUTIONAL AS APPLIED TO THE FACTS OF THIS CASE?

### Standard of Review

The determination of whether a statute is unconstitutional involves a question of law over which this court has unlimited review. *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197, 62 P.3d 236 (2003).

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. . . . This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute."

*Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, Syl. ¶ 2, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997).

## Due Process

The core issue of this case is whether Kempke's due process rights were violated under the provisions of K.S.A. 8-1001 *et seq.* More specifically, did the provisions of K.S.A. 8-1020, which denied Kempke the opportunity to call a relevant witness at the administrative hearing level, deny him due process of law under the Fourteenth Amendment to the United States Constitution? We answer the question in the negative.

Due process is not a static concept; instead, its requirements vary to assure the basic fairness of each particular action according to its circumstances. A person's entitlement to due process in drivers' license suspension cases is well-settled. " 'Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.' [*Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971)]." *Dixon v. Love*, 431 U.S. 105, 112, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977).

However, when it is determined that due process applies to a governmental action, the court must still determine "what process is due to protect against an erroneous deprivation of that interest." *Mackey v. Montrym*, 443 U.S. 1, 10, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979). The Due Process Clause does not require perfect procedures, but the fundamental requirement of due process is the opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261, 95 L. Ed. 2d 239, 107 S. Ct. 1740 (1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 [1976]); *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 187, 959 P.2d 940, *rev. denied* 265 Kan. 885 (1998).

In making the determination regarding "what process is due" in driver's license revocation cases, courts have weighed the varying interests of the State and the licensee. See, *e.g.*, *State v. Heironimus*, 262 Kan. 796, 805-07, 941 P.2d 1356 (1997). Courts have

concluded that due process does not require a prerevocation hearing in cases involving suspensions of drivers' licenses due to repeated traffic violations, *Dixon*, 431 U.S. at 115, or in cases involving the refusal to consent to a PBT, *Mackey*, 443 U.S. at 18-19. The United States Supreme Court in *Mackey* adopted the three-factor balancing test expressed in *Mathews v. Eldridge*, 424 U.S. 319, to determine whether the state procedural law relating to such suspensions denied licensees due process of law:

" '[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' " *Mackey*, 443 U.S. at 10 (quoting *Eldridge*, 424 U.S. at 335).

The United States Supreme Court has also suggested what state law procedures in the suspension of drivers' licenses will satisfy due process. See *Jennings v. Mahoney*, 404 U.S. 25, 30 L. Ed. 2d 146, 92 S. Ct. 180 (1971); *Bell*, 402 U.S. at 542-43. The *Eldridge* balancing test, together with the above-cited cases, will be more fully discussed below.

This court has held that a licensee has the right to subpoena and cross-examine the arresting officer at the initial administrative hearing. *Wulfkuhle v. Kansas Dept. of Revenue*, 234 Kan. 241, 246-47, 671 P.2d 547 (1983). This court has also established that due process requires a factually detailed affidavit by the arresting officer to support a revocation when the officer does not testify at the hearing. The licensee also has a right to have present at the initial administrative hearing "other relevant witnesses." *Carson v. Division of Vehicles*, 237 Kan. 166, 174-76, 699 P.2d 447 (1985); *Wulfkuhle*, 234 Kan. at 248.

Recently, this court had the opportunity to consider and render a decision in a case very similar to the case we now consider. In *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 504-07, 110 P.3d 438 (2005), the licensee was arrested for DUI. She agreed to testing and requested an administrative hearing after receiving a notice of suspension. After the administrative hearing officer affirmed the

suspension, Cross petitioned the district court for review. Not unlike the present case, Cross argued that K.S.A. 8-1020(g) denied her due process of law because she was prohibited from calling "other relevant witnesses" for her administrative hearing. She contended that the statutory scheme of the Kansas implied consent law was unconstitutional on its face and as applied. 279 Kan. at 501-02, 507-08.

We rejected Cross' assertion that her due process rights were violated. First, we observed that Cross failed to proffer the substance of the testimony she expected from other witnesses. She merely claimed that such evidence would be relevant to establish whether the officers had reasonable grounds to request sobriety tests. 279 Kan. at 508. We determined that Cross failed to demonstrate that she was denied the opportunity to subpoena other relevant witnesses at her administrative hearing.

*Cross* observed that while other officers were present at the scene, the officer called to testify at the administrative hearing and who had signed the DC-27 form was the only officer involved in Cross' detention, arrest, and sobriety testing. This court emphasized that "Cross did not testify or present any evidence to the contrary at the hearing or before the district court, nor did she submit affidavits from other witnesses as permitted by K.S.A. 8-1020(l)." 279 Kan. at 512.

Finally, this court found it significant that, in the request for admissions before the district court, Cross admitted that she told the arresting officer that she had consumed an alcoholic beverage and admitted that the officer had reasonable grounds to believe she was operating or attempting to operate a vehicle while under the influence of alcohol. 279 Kan. at 512-13. The court concluded: "In light of Officer Steere's [arresting officer] uncontradicted testimony, Cross' own admissions, and her mere speculation as to how these other witnesses might testify, Cross has not established that other witnesses were relevant to establish the absence of reasonable grounds to ask her to submit to the test." 279 Kan. at 513. Thus, it was held that, based on the facts of the case, K.S.A. 8-1020(g) was not unconstitutional as applied and did not deny Cross her due process rights at the administrative hearing. Based on this

holding, we concluded that Cross had no standing to make a facial constitutional attack.

The KDR contends that, similar to the situation in *Cross*, Kempke did not himself offer any testimony at the administrative hearing or before the district court to contradict the arresting officer, Deputy Tyree. Kempke failed to personally attend the administrative hearing. The KDR further notes that Kempke could have submitted affidavits from other witnesses at the administrative hearing, see K.S.A. 8-1020(l), but failed to do so. In addition, the KDR emphasizes that, under K.S.A. 8-1020(o), the temporary driver's license issued by the arresting officer is *automatically extended* when the licensee timely petitions for review from the administrative decision and is extended throughout the review process. See *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492 (2005) (under current law, process for suspensions due to intoxication testing refusals or failures has changed; temporary licenses are now automatically extended).

On the other hand, Kempke argues that *Cross* is distinguishable in that she had failed to identify any relevant witness other than the arresting officer who testified. Kempke points out that in this case Officer Lawrence, the officer who administered the PBT at the time of Kempke's arrest, was by law prohibited from testifying at the administrative hearing under K.S.A. 8-1020(g).

Kempke correctly distinguishes his case from our *Cross* decision. No relevant witness was excluded from testifying in *Cross*. However, in this case Officer Lawrence was a relevant witness and the law precluded Kempke from having this witness personally present at the initial administrative hearing. It makes no difference that Kempke did not subpoena the officer as a witness since K.S.A. 8-1020(g) excluded him; the law does not require a useless act. Kempke did not file a cross-appeal; thus, the sole question raised by this appeal is whether the exclusion of a relevant witness, Officer Lawrence at the administrative hearing level, denied Kempke due process of law under the Fourteenth Amendment to the United States Constitution.

### Kansas Implied Consent Law

A brief overview of the current Kansas implied consent law will

be helpful in the resolution of this constitutional issue. As discussed in *Cross*, under K.S.A. 8-1001(b)(1) and (2), if an officer has reasonable grounds to believe a person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs and the person has been arrested or taken into custody in relation thereto or the person was involved in a vehicle accident or collision resulting in property damage, personal injury, or death, then the officer shall request the person to submit to a test. The officer directing administration of the test(s) may act on personal knowledge or on the basis of the collective information available to law enforcement officers involved in the accident investigation or arrest. See K.S.A. 2005 Supp. 8-1001(b)(1) and (2).

If the test is refused, a law enforcement certification must be prepared and signed by one or more officers to certify that reasonable grounds existed to believe the person was operating a vehicle under the influence of alcohol or drugs; the person had been placed under arrest, was in custody, or had been involved in a vehicle accident; a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001; and the person refused to submit to or complete testing as requested by a law enforcement officer. K.S.A. 8-1002(a)(1).

"[C]ertification shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required. The signed certification or a copy or photostatic reproduction thereof shall be admissible in evidence in all proceedings brought pursuant to this act, and receipt of any such certification, copy or reproduction shall accord the department authority to proceed as set forth herein." K.S.A. 8-1002(b).

When the person has refused a test and the criteria of K.S.A. 8-1002(a)(1) have been met, the officer shall serve the licensee a DC-27 form. In addition to the requirements of subsection (a)(1), the form must include:

"(1) The person's name, driver's license number and current address; (2) the reason and statutory grounds for the suspension; (3) the date notice is being served and a statement that the effective date of the suspension shall be the 30th calendar day after the date of service; (4) the right of the person to request an administrative hearing; and (5) the procedure the person must follow to request an administrative hearing." K.S.A. 8-1002(d).

A copy of the completed DC-27 form is forwarded to the KDR, which will review the certification to determine that all requirements have been met. If so, it will suspend the licensee's driving privileges in accordance with the notice of suspension already served. K.S.A. 8-1002(e), (f).

If the licensee refuses a test, the officer shall take his or her driver's license and issue a 30-day temporary license. K.S.A. 8-1002(e). Upon receipt of the officer's certification and notice of suspension, the licensee has 10 days (13 if served by mail) to request an administrative hearing, which will keep the temporary license active until 30 days after the hearing. K.S.A. 8-1020(a), (b).

K.S.A. 8-1020(g) governs which witnesses may be called at the administrative hearing:

"Witnesses at the hearing shall be limited to the licensee, to any law enforcement officer who signed the certification form and to one other witness who was present at the time of the issuance of the certification and called by the licensee. The presence of the certifying officer or officers shall not be required, unless requested by the licensee at the time of making the request for the hearing. The examination of a law enforcement officer shall be restricted to the factual circumstances relied upon in the officer's certification."

K.S.A. 8-1020(l) sets forth limitations on evidence to be presented at an administrative hearing:

"(l) Evidence at the hearing shall be limited to the following:
(1) The documents set out in subsection (e);
(2) the testimony of the licensee;
(3) the testimony of any certifying officer;
(4) the testimony of any witness *present at the time of the* issuance of the certification and called by the licensee;
(5) any affidavits submitted from other witnesses;
(6) any documents submitted by the licensee to show the existence of a medical condition, as described in K.S.A. 8-1001, and amendments thereto; and
(7) any video or audio tape record of the events upon which the administrative action is based."

At the administrative hearing, the licensee has the burden of proof by a preponderance of the evidence to show that the facts stated in the officer's certification are false or insufficient and that the order suspending the driving privileges should be dismissed.

K.S.A. 8-1020(k). If the suspension is affirmed by the administrative hearing officer, the suspension shall begin 30 days later unless the licensee petitions the district court for a trial de novo, in which case the temporary license is again extended throughout the appeal process. K.S.A. 8-1020(m), (o). Upon petition for review to the district court, the licensee is entitled to a trial de novo, and the evidentiary restrictions of K.S.A. 8-1020(l) are inapplicable. K.S.A. 2005 Supp. 8-259(a); K.S.A. 8-1020(p). The licensee has the burden to show that the agency's decision should be set aside. K.S.A. 8-1020(q).

## Discussion and Analysis of Parties' Arguments

With this overview, we now turn to the arguments advanced by the parties. Kempke relies on *Wulfkuhle*, 234 Kan. 241, and *Carson*, 237 Kan. 166, to support his contention that his due process rights were violated because he was not able to subpoena "other relevant witnesses" to testify at the administrative hearing. Notably, the licensee in *Cross* also relied primarily on these two cases. Without deciding the issue regarding "other relevant witnesses," the *Cross* court observed that the Kansas implied consent law in effect during those 1980's cases was different from the current law which became effective in 2001. See *Cross*, 279 Kan. at 508.

At an administrative hearing in the early 1980's, a driver could attempt to have the suspension action dismissed, in general, on three different grounds: (1) the officer lacked reasonable grounds to request testing; (2) the driver's refusal to submit to testing was reasonable; and (3) the officer's report (DC-27 form) was not properly verified or "sworn to" by the officer. See K.S.A. 8-1001 (1982 Ensley); *Wulfkuhle*, 234 Kan. at 244-45; *Carson*, 237 Kan. at 170-71. It was the duty of the hearing officer to find "good cause" to affirm the suspension. *State v. Peterson*, 265 Kan. 732, 735, 962 P.2d 1076 (1998); *Wulfkuhle*, 234 Kan. at 244. Under current law, the licensee bears the burden of proof by a preponderance of the evidence. K.S.A. 8-1020(k). In addition, the reasonableness of a driver's refusal to take a test is no longer a factor under the current implied consent law. There are other differences between the old

implied consent law and the current law, which will be discussed below.

Kempke does not dispute that the current law is different from the old law. Instead, he argues that the legislature ignored, in all its subsequent amendments to K.S.A. 8-1001 *et seq.*, the holdings in *Wulfkuhle* and *Carson.* He contends that *Wulfkuhle* and *Carson* established "clear due process requirements" compelling the presence of "other relevant witnesses" at the administrative hearing if requested by the licensee; consequently, the limitation placed on witnesses by K.S.A. 8-1020(g) violated his due process rights.

## *Wulfkuhle v. Kansas Dept. of Revenue*

*Wulfkuhle* was decided in 1983. The applicable statutes were K.S.A. 1981 Supp. 8-1001(c) (requiring arresting officer to make "sworn report of the refusal") and K.S.A. 8-255(b) (1982 Ensley) (granting director discretion to "issue subpoenas for the attendance of witnesses"). Much like the current law, the 1981 version of the law granted a licensee a predeprivation administrative hearing before the suspension of his or her driving privilege. However, under current law, the timing of that suspension is different. In 1981, if the licensee did not prevail at the administrative level, a suspension could take place at the conclusion of the administrative hearing whether or not the licensee appealed to the district court. Under current law, K.S.A. 8-1020(o), if the licensee does not prevail at the administrative hearing and elects to appeal to the district court, his or her license is not suspended prior to the conclusion of the appeal. K.S.A. 1981 Supp. 8-1001(c) provided in pertinent part:

"If a hearing is not requested or, after such hearing, if the division finds that such refusal was not reasonable, and after due consideration of the record of motor vehicle offenses of said person, *the division may suspend the person's license or permit to drive or nonresident operating privilege for a period of not to exceed one (1) year.*" (Emphasis added.)

Changes in the above provision occurred in 1982, effective at the time of the *Carson* decision, and provided in pertinent part:

"If a hearing is not requested or if, after the hearing, the division finds that the refusal was not reasonable, and after due consideration of the record of motor vehicle offenses of the person, *the division shall suspend the person's license or*

permit to drive or nonresident operating privilege for a period of not less than 120 days and not more than one year." (Emphasis added.) K.S.A. 8-1001(c) (1982 Ensley).

Thus, under the provisions in effect at the time of the *Wulfkuhle* and *Carson* decisions, the licensee in 1981 could lose his or her license after the initial administrative hearing and the KDR in 1985 was required, under the circumstances set forth above, to suspend the person's license. See also K.S.A. 1985 Supp. 8-1002(e) (requiring division to suspend person's license for minimum period of 6 months if no hearing requested within 10 days or if division made adverse finding after a hearing). Although K.S.A. 8-259 (1975 Weeks) granted licensees the right to appeal to the district court and allowed the district court discretion to grant a stay of a license suspension, there was no provision in either 1980's version of K.S.A. 8-1001 providing for an extension of driving privileges through de novo appeal to the district court. See K.S.A. 8-259 (1975 Weeks); K.S.A. 1985 Supp. 8-259.

The KDR declined licensee Wulfkuhle's request to subpoena the arresting officer and the notary public who signed the officer's refusal report. The licensee appealed to the district court, arguing, *inter alia*, that the KDR's refusal violated his constitutional right to confront his accusers. The licensee did not request subpoenas for the arresting officer and notary public for purposes of a trial de novo, nor did he raise any underlying factual issues. The district court granted summary judgment in favor of the KDR, finding the licensee was prohibited from mounting a collateral attack on the administrative hearing procedures when he had the opportunity to appeal to the district court, for a trial de novo, on the issue of whether his refusal to submit to a chemical test was reasonable. 234 Kan. at 242-43.

This court reversed on appeal, concluding the KDR was required to issue subpoenas when requested by the licensee to compel the appearance of the arresting officer, notary public, and other relevant witnesses at a hearing conducted under K.S.A. 8-255(b) (1975 Weeks), to establish that the chemical test refusal was sworn to, as required by K.S.A. 1981 Supp. 8-1001, or to be examined regarding the reasonableness of the licensee's refusal to submit to

the test. 234 Kan. at 243-49. The *Wulfkuhle* court reasoned that, under *Wilcox v. Billings*, 200 Kan. 654, 438 P.2d 108 (1968), the statutory requirement that the officer prepare a "sworn report" of the refusal was jurisdictional. This court rejected the KDR's argument that a trial de novo cures constitutional defects in lower level proceedings because the district court could not create jurisdiction where none existed at the administrative level. 234 Kan. at 245-46.

With regard to Wulfkuhle's argument that the KDR's refusal to issue the subpoenas violated his constitutional right to examine his accusers, this court determined that "the driver's license revocation hearing is quasi-judicial in nature" and "the right to cross-examine witnesses testifying at administrative hearings of a 'quasi-judicial' character is an important requirement of due process." 234 Kan. at 246. It is important to keep in mind that, under the law in effect at the time of the *Wulfkuhle* decision, if the licensee failed to prevail, suspension of his or her driving privileges was the likely result.

Finally, this court rejected the KDR's contention that 8-255(b) made the issuance of the subpoenas entirely discretionary. See K.S.A. 8-255(b) (1982 Ensley) ("Upon the hearing, the director or the director's duly authorized agent may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers and may require an examination or reexamination of the licensee."). The *Wulfkuhle* court stated:

"Assuming the issuance of subpoenas is a discretionary function, where the attendance of the arresting officer or other relevant witnesses is requested by the licensee to establish the validity of the verification of the refusal report or the reasonableness of the licensee's refusal to submit to the chemical test, the refusal to issue subpoenas to compel the attendance of those witnesses at the hearing is an abuse of the agency's discretion. This does not suggest, however, that the licensee's right to have witnesses subpoenaed for the hearing is unlimited. The Director of Vehicles is entitled to exercise his discretion to limit the subpoenas issued to those persons whose testimony is relevant to the issues to be determined at the hearing." 234 Kan. at 248.

Kempke points to *Wulfkuhle's* determination that the KDR was "required to" issue subpoenas if the licensee challenged the facts in the officer's affidavit and requested the appearance of relevant

witnesses. 234 Kan. 241, Syl. ¶ 4. He argues that *Wulfkuhle* broadly interpreted the right to due process, as shown by its requirement that even the notary public in a driver's license suspension case must be subpoenaed if requested by the licensee.

In response, the KDR argues that the changes in the implied consent law subsequent to the holding in *Wulfkuhle* render it inapplicable to the issue raised in the present case. It points out that the 1985 legislature removed the "sworn report" requirement from K.S.A. 8-1001 and amended K.S.A. 8-1002 to provide for a "law enforcement officer's certification" which was to be signed by "one or more law enforcement officers." See L. 1985, ch. 50, secs. 1, 2. Also, the 1985 amendments added language to K.S.A. 8-1002 which made it clear that additional witnesses would not be necessary to prove the authenticity of the certification:

"For purposes of this section, certification shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required. Any copy or photostatic reproduction of a law enforcement officer's signed certification shall be admissible in evidence in all proceedings brought pursuant to this act, and receipt of any such copy or reproduction shall accord the department authority to proceed as set forth herein." K.S.A. 1985 Supp. 8-1002(c)(2).

The KDR suggests that the 1985 amendments, by removing the "sworn report" requirement and by adding language clearly indicating that no "proof of execution" of the officer's certification was required, eliminated the statutory basis used by the *Wulfkuhle* court to distinguish the "de novo" trial rationale. See *Wulfkuhle,* 234 Kan. at 246.

### *Carson v. Division of Vehicles*

In *Carson,* six cases were consolidated for appeal regarding K.S.A. 8-1001 (1982 Ensley), which required the arresting officer to make a report of the refusal, verified by oath, to the division of vehicles. In each of those cases, *the motorist's driving privileges were suspended after an administrative hearing where the arresting officer's affidavit of refusal was the only evidence presented.* 237 Kan. at 167. Although none of the licensees had requested a subpoena for their arresting officer, they argued in part on petition

for review that the arresting officer's failure to appear deprived them of their right to confrontation and cross-examination. The district court agreed and found that the licensees' due process rights were violated because the affidavits alone, without the presence of the arresting officers, were insufficient to support a finding that the refusals were unreasonable. 237 Kan. at 168. The district court arrived at this decision partly because the facts supporting the officer's conclusion that the licensee was under arrest for DUI were not set forth in the officer's affidavit, the DC-27 form.

On appeal, *Carson* framed the principal issue as "whether due process of law and the right of confrontation and cross-examination under the federal and state constitutions require the presence of an arresting officer at administrative hearings held pursuant to K.S.A. 8-1001." 237 Kan. at 168. This court observed that due process has been considered in numerous cases. In *State v. Durst*, 235 Kan. 62, Syl. ¶ 6, 678 P.2d 1126 (1984), this court held that "[a]t a minimum the essential elements of due process of law, in an action affecting a person's life, liberty or property, are notice and an opportunity to be heard at a meaningful time and in a meaningful manner."

*Carson* considered whether an arresting officer's sworn oath regarding a person's refusal to submit to a chemical test was sufficient on its face to permit suspension of his or her license consistent with due process. The court discussed at length the *Wulfkuhle* decision and the Supreme Court decision in *Illinois v. Batchelder*, 463 U.S. 1112, 77 L. Ed. 2d 1267, 103 S. Ct. 3513 (1983).

In *Batchelder*, the Illinois district court was affirmed by the Appellate Court of Illinois, Third Judicial District, in deciding that while the affidavit of the arresting officer complied with the letter of the Illinois statute in its conclusion that reasonable grounds existed at the time of the arrest to lead the officer to believe that said person was driving under the influence of intoxicating liquor, nonetheless the affidavit "was deemed 'insufficient . . . due to its failure to comport with the United States Constitution . . . .' " 463 U.S. at 1115. It reasoned that the stop of the automobile was a seizure under the Fourth and Fourteenth Amendments to the United State Constitution, and the only way the affidavit would be

constitutional was if it required an arresting officer to set out, in the affidavit, " 'the underlying circumstances which provided him with a reasonable belief that the arrested person was driving under the influence of intoxicating liquor.' [Citation omitted.]" 463 U.S. at 1116.

The United States Supreme Court ignored the above conclusion, stating that the Illinois appellate court "inexplicably failed to look to how this Court undertook a similar task in *Mackey v. Montrym*, 443 U.S. 1[, 61 L. Ed. 2d 321, 99 S. Ct. 2612] (1979)." 463 U. S. at 1116. As in *Mackey*, the *Batchelder* Court applied the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 18, 96 S. Ct. 893 (1976). See 463 U.S. at 1117-18. *Batchelder* noted that Illinois law contemplated a full hearing with testimony from the arresting officer, and stated: "The driver's right to a hearing *before* he may be deprived of his license for failing to submit to a breath-analysis test accords him all of, and probably more than, the process that the Federal Constitution assures." 463 U.S. at 1119; see also *Mackey*, 443 U.S. at 13 (" '[S]omething less than an evidentiary hearing is sufficient prior to adverse administrative action.' [Citation omitted.]"). Thus, in reviewing the requirements of the three-part balancing test, the *Batchelder* Court concluded that since the licensee was entitled to a hearing under Illinois law, first, "[t]here is no concern or risk . . . that a driver will be deprived of his license prior to a hearing"; second, the fact that the law "provides for a predeprivation hearing abundantly weights this second part of the *Eldridge* analysis in favor of the constitutionality of the Illinois implied-consent scheme"; and finally, the governmental interest of keeping drunk drivers off the public roads is "particularly strong" and is served by Illinois law. 463 U.S. at 1117-18. Consequently, the failure of the affidavit to set forth facts supporting the arresting officer's determination that the driver was under the influence did not violate the Constitution.

In its discussion of *Batchelder* and *Wulfkuhle*, the *Carson* court determined that when placed in issue, the Kansas affidavit, which required only the arresting officer's conclusion without supporting facts, was alone insufficient to permit the suspension of a driver's license. However, *Carson* noted that this deficiency could be cor-

rected without requiring the physical presence of the officer at every administrative hearing by the use of an affidavit that would inform the driver at the outset of the "underlying facts supporting the probable cause for and the legality of the arrest and those facts supporting the officer's conclusion or ultimate statement of fact that the refusal to take the test was unreasonable." 237 Kan. at 175. At the same time, the *Carson* court stated: "Of course, if the licensee requests the presence of the officer, or any other relevant witnesses, subpoenas are required to be issued for them. *State v. Wulfkuhle*, 234 Kan. 241." 237 Kan. at 176.

In response to the *Carson* decision, the KDR points out that the agency supported legislative changes in 1985 which included new language requiring the officer to set out the factual circumstances underlying the officer's belief that the licensee had been operating a vehicle while under the influence of alcohol. The KDR notes that this language remains in the current certification form. In the present case, Deputy Tyree marked boxes on the DC-27 form indicating that he had reasonable grounds to believe Kempke was under the influence of alcohol and/or drugs because (1) alcoholic beverage containers were found in the vehicle; (2) Kempke had slurred speech, bloodshot eyes, difficulty communicating, and poor balance or coordination; and (3) Kempke failed the PBT.

Kempke emphasizes that *Carson* recognized *Wulfkuhle*'s requirement that licensees be allowed to subpoena relevant witnesses to administrative hearings. He argues that subsequent legislative changes, including the provisions applicable today, failed to add any language allowing for the subpoena of "other relevant witnesses" and, therefore, created a due process violation of the requirements set out in *Carson* and *Wulfkuhle*. Kempke also notes the *Carson* court's apparent concern with avoiding "the added expense and inconvenience to all parties occasioned by a second hearing and [avoiding] the calling of unnecessary witnesses." 237 Kan. at 176. At the time of *Carson*, the hearing officer at the initial administrative hearing determined whether the arresting officer needed to be present. If the hearing officer determined that the arresting officer's presence was necessary, the hearing would be continued and the arresting officer would be subpoenaed for a

second hearing date. Kempke argues that such concern bolsters his contention that due process requires the licensee's ability to subpoena relevant witnesses at the initial administrative hearing phase.

On the other hand, the KDR suggests that the 1991 legislative changes to the Kansas implied consent law provided due process protection to licensees and limited wasted time and expense by (1) requiring the licensee to timely request the subpoenas at the time the administrative hearing was requested and (2) by requiring the licensee to establish the witnesses' relevance by including an explanation of relevance in the request for a subpoena. See L. 1991, ch. 36, sec. 19. In addition, the KDR argues that the 1985 Kansas Legislature amended 8-1002(d) to *broaden* the scope of administrative hearings under Kansas law by replacing the single issue regarding whether a test refusal was "reasonable" with four more specific issues:

"The scope of the hearing shall be limited to whether: (1) A law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both; (2) the person was in custody or arrested for an alcohol or drug related offense or was involved in a motor vehicle accident or collision resulting in property damage, personal injury or death; (3) at the time of the request for a test the law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001 and amendments thereto; and (4) the person refused to take a test as requested by a law enforcement officer." K.S.A. 1985 Supp. 8-1002(d).

According to the KDR, the resulting procedures actually went beyond the requirements in either *Batchelder* or *Carson*. The KDR suggests that instead of *either* altering the officer's certification *or* enacting broader hearing issues, the Kansas Legislature did *both*. Thus, the KDR argues that the 1985 administrative and legislative changes in the Kansas implied consent law eliminated the basis used by the *Carson* court to distinguish *Batchelder*.

Finally, the KDR argues that the 1986 amendment to K.S.A. 8-1002(d) (restricting witnesses who could be subpoenaed to "the law enforcement officer or officers certifying refusal") and, most important, the 2001 enactment of K.S.A. 8-1020(o) (providing for

automatic extension of driving privileges when review of adminis-
trative hearing order is sought; privileges extended until comple-
tion of judicial review process) created differences which make
*Carson* and *Wulfkuhle* inapplicable to the current case. See *Pieren-
Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492
(2005) (under current law, process for suspensions due to intoxi-
cation testing refusals or failures has changed; temporary licenses
are now automatically extended).

In support of its position that the district court erred in its de-
termination that the law as applied to Kempke denied him due
process, the KDR relies upon two United States Supreme Court
decisions. In *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S.
Ct. 1586 (1971), the Court addressed a due process issue involving
the suspension of driving privileges under the Georgia Motor Ve-
hicle Safety Responsibility Act. In rejecting the State's argument
that a licensee should not be permitted to inquire into liability
issues prior to the suspension of driving privileges, the *Bell* Court
held that due process required a determination of whether there
existed a reasonable possibility of a judgment before driving priv-
ileges could be suspended for failure to provide proof of financial
responsibility. The Court stated:

"While '[m]any controversies have raged about . . . the Due Process
Clause,' . . . it is fundamental that except in emergency situations (and this is
not one) due process requires that when a State seeks to terminate an interest
such as that here involved, it must afford 'notice and opportunity for hearing
appropriate to the nature of the case' *before the termination becomes effective.*
[Citations omitted.]" (Emphasis added.) 402 U.S. at 542.

The *Bell* Court discussed the way a state may meet the require-
ments of due process for a "meaningful" hearing before the ter-
mination of driving privileges: "The alternative methods of com-
pliance are several. Georgia may decide merely to include
consideration of the question at the administrative hearing now
provided, or *it may elect to postpone such a consideration to the
de novo judicial proceedings in the Superior Court.*" (Emphasis
added.) 402 U.S. at 542-43.

The KDR argues that, under *Bell*, the requirement that a mean-
ingful hearing be conducted prior to a driver's license suspension

is satisfied upon judicial review by a district court provided for under Kansas law.

In the second case advanced by the KDR, *Jennings v. Mahoney*, 404 U.S. 25, 30 L. Ed. 2d 146, 92 S. Ct. 180 (1971), the Utah Department of Public Safety had suspended a motorist's driving privileges based solely on the contents of an accident report. The licensee challenged the suspension on due process grounds, arguing that the Utah statutory scheme failed to meet due process requirements by failing to afford her a "meaningful" hearing and by failing to require a stay of the administrative order pending judicial review. 404 U.S. at 26.

The *Jennings* Court determined that due process requirements were met. The Court observed that, although Utah did not require a stay of the suspension pending completion of judicial review, Jennings' license suspension was actually stayed during the review process. The Court held that Jennings was afforded due process because, before having her license suspended, she had the opportunity to present evidence and examine witnesses upon judicial review in court:

"There is plainly a substantial question whether the Utah statutory scheme on its face affords the procedural due process required by *Bell v. Burson*. This case does not, however, require that we address that question. The District Court in fact afforded this appellant such procedural due process. *That court stayed the Director's suspension order pending completion of judicial review, and conducted a hearing at which appellant was afforded the opportunity to present evidence and cross-examine witnesses.*" (Emphasis added.) 404 U.S. at 26-27.

The KDR contends that the Kansas implied consent law affords more administrative "process" than the Utah scheme examined in *Jennings*. Unlike the situation in *Jennings*, the Kansas scheme requires the *automatic extension* of driving privileges during the review process. See K.S.A. 8-1020(o); *Pieren-Abbott*, 279 Kan. at 92. With the 2001 passage of K.S.A. 8-1020(o), a Kansas licensee may, by appealing to the district court, subject to K.S.A. 8-1014 (relating to action that may be taken by the KDR against the licensee for an alcohol-or drug-related conviction), insure himself or herself a full due process hearing before any final action is taken against his or her driving privileges for refusing to submit to a test for intox-

ication. Moreover, Kansas licensees are given the opportunity to examine the certifying officer at the administrative hearing level and are permitted to present other evidence, such as affidavits from other witnesses. K.S.A. 8-1020(l). At the judicial review level, Kansas licensees are given the opportunity *to present evidence and cross-examine witnesses* without the statutory restrictions applicable only to administrative hearings. All of the above, at the option of the licensee, occurs before any action is taken against his or her license to drive.

We note that both *Bell v. Burson* and *Jennings v. Mahoney* were decided by the United States Supreme Court in 1971. Both cases were in existence when this court decided *Wulfkuhle* in 1983 and *Carson* in 1985, yet this court did not rely upon these United States Supreme Court decisions in resolving the due process questions raised in *Wulfkuhle* and *Carson*. Instead, this court decided that those licensees suffered the deprivation of their due process rights when, under the Kansas law in effect at that time, they were denied the right to subpoena relevant witnesses at the administrative hearing. See *Wulfkuhle*, 234 Kan. at 248; *Carson*, 237 Kan. at 176.

While neither *Wulfkuhle* nor *Carson* articulated the underlying reason why the calling of relevant witnesses was such a critical right despite the availability of a de novo hearing before the district court, the basic question in both cases was the procedure involved in the taking of an individual's license. At the time of both decisions, a licensee, if he or she did not prevail at the administrative hearing, would likely lose his or her license. Suspension was discretionary in 1981 based upon the KDR's review of the licensee's driving record. K.S.A. 1981 Supp. 8-1001(c). In 1985, suspension became mandatory at the conclusion of the administrative hearing. K.S.A. 1985 Supp. 8-1002(e). Because there was the real risk of license deprivation without a meaningful hearing, *i.e.*, without the right to call relevant witnesses or the right to cross-examine material witnesses, the resulting deprivation at the administrative hearing level denied the licensee due process of law. Both *Wulfkuhle* and *Carson* involved the clear risk of a taking without procedural due process.

With the passage of K.S.A. 8-1020(o) in 2001, still good law today, licensees no longer undergo that risk of having their driving privileges taken without due process of law. Now, a licensee may, by appealing to the district court, subject to K.S.A. 8-1014 (relating to action that may be taken by the KDR against the licensee for an alcohol or drug-related conviction), insure himself or herself a full due process hearing before any final action is taken against his or her driving privileges for refusing to submit to a test for intoxication. The de novo appeal, at the request of the licensee, satisfies any due process requirements.

A brief argument was made by Kempke that the second administrative hearing required prior to the *Carson* decision, where the hearing officer would determine whether the arresting officer needed to be present, was a burden upon the licensee. However, the de novo appeal is an integral part of the statutory scheme of the Kansas implied consent law and does not duplicate the administrative hearing mentioned in *Carson.*

The KDR's arguments concerning *Wulfkuhle* and *Carson* are persuasive. Prior to the 2001 amendments in Kansas law, a person refusing to submit to a test for intoxication ran the risk of having his or her license suspended at the conclusion of the initial administrative hearing without the opportunity to present "relevant witnesses" or other relevant evidence and without the opportunity to, in some cases, cross-examine relevant witnesses. Thus, *Wulfkuhle* and *Carson* required that, at a licensee's request, the KDR must subpoena the arresting officer, notary public, or other relevant witnesses to appear at the initial administrative hearing. However, after the 2001 amendments relating to the automatic extension of driving privileges from the appeal of an adverse administrative ruling through the final hearing in the district court, no formal action is taken against a person's license for his or her refusal to submit to a test for intoxication without that person first having the opportunity for a de novo hearing before the district court involving the full and complete opportunity *to present evidence and cross-examine witnesses.* See K.S.A. 8-1020(o). Thus, *Wulfkuhle* and *Carson* no longer control. Due process requires notice and a meaningful hearing before formal action is taken to deprive a person of

his or her license; both of these are provided under current Kansas law.

It must be noted that the licensee bears the burden of adequately raising those issues of concern at the administrative hearing in order to raise them before the district court. See *Soza v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 254, 257, 100 P.3d 102 (2004) (mere "reservation" of issues at administrative hearing was insufficient to preserve issues for review in district court); *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 764-65, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988) (issues addressed in district court should be restricted to those raised by plaintiff at administrative hearing). This burden, however, does not impact the licensee's due process rights, for once an issue is raised at the administrative level, a full de novo hearing before the district court is available with no limitation upon the witnesses to be called before formal action is taken against the person's driver's license. K.S.A. 8-1020(o).

In support of the above conclusion, consideration of the *Eldridge* three-part balancing test is appropriate:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

First, Kansas' procedural law protects the licensee by providing two hearings: (1) the initial administrative hearing and (2) a de novo hearing before the district court. Under the statute, the notice required to be personally given to the licensee provides for a hearing before any action against his or her license is taken. K.S.A. 8-1020(a). The rights of the licensee and the scope of the hearing and limitations of such a hearing are set forth above. The licensee's privilege to drive is not in jeopardy at any time prior to the initial hearing or after the initial hearing if the matter is appealed, subject to K.S.A. 8-1014, at which time the licensee is provided a meaningful due process hearing. See K.S.A. 8-1020(o), (r), (s).

Second, the law and procedure surrounding the initial hearing greatly diminish the likelihood of an erroneous deprivation of the private interest involved. One only has to compare the procedure in place at the time of *Wulfkuhle* and *Carson* with the current law and procedure applied in the present case to see that the difference is great. More importantly, the result of the initial hearing on a licensee's privilege to drive has little, if any, effect on his or her license in the event that the licensee appeals the finding to the district court. Under current law, from the time a licensee seeks review until the conclusion of the de novo hearing in the district court, no action is taken against the licensee's driving privilege for his or her refusal to submit to a test for intoxication. K.S.A. 8-1020(o). Moreover, it is clear that the limitation on witnesses who may be called at the initial hearing does not apply in an appeal to the district court. K.S.A. 8-1020(l). The current Kansas implied consent law effectively grants the licensee a full and complete evidentiary hearing with the opportunity to call relevant witnesses and to cross-examine witnesses in a de novo trial in the district court before any action may be taken against his or her license to drive.

Finally, we proceed to the third part of the *Eldridge* balancing test, "to weigh in the balance the state interests served by the summary procedures used, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought." *Mackey*, 443 U.S. at 17. If we were to dwell on the initial hearing alone, this court recognizes that depriving intoxicated drivers of their driving privileges is an important governmental goal. The current law of limiting the witnesses at the initial administrative hearing in the 7,500 to 10,000 administrative hearings held each year reduces the costs associated with paying overtime to law enforcement officers to attend hearings, including the time waiting for the hearing to begin, as well as the costs associated with scheduling conflicts and other logistical difficulties. Ninety percent of the total number of hearings are related to the implied consent law. At the same time, the witness limitation in K.S.A. 8-1020(g) allows examination of any and all certifying officers, but eliminates requests for other officers who may have been present but did not

participate in the implied consent certification procedures. Nevertheless, we deal with the whole law and, as noted above, the 2001 amendments to the implied consent law balance the licensee's interest with governmental interests by requiring the extension of driving privileges if the licensee chooses to file a petition for judicial review. K.S.A. 8-1020(o). Upon judicial review, the witness limitation in K.S.A. 8-1020(g) does not apply. The legislature's 2001 amendments to the Kansas implied consent law, still effective today, provide an efficient process for protecting the public by suspending the licenses of drivers who abuse the driving privilege, while also protecting drivers from an erroneous deprivation of driving privileges by allowing due process.

## Other Jurisdictions

Finally, while not controlling, it is somewhat significant that other state courts have espoused the idea that de novo review is a procedural safeguard to protect against due process violations in the realm of driver's license suspensions. In *Miles v. Shaw*, 272 Ga. 475, 532 S.E.2d 373 (2000), the Georgia Department of Public Safety (DPS) opted, under the DPS's internal rules, to conduct an in-house administrative review of the licensee's driver's license suspension. Under DPS Rule 570, an in-house review was permitted to be held without a hearing if " 'a decision can be rendered on the face of the request without further proceedings.' " 272 Ga. at 476. After receiving notice of the DPS's decision to uphold her suspension, the licensee filed a petition for de novo review in the Superior Court of Fulton County, arguing that she was denied due process of law when the DPS entered an administrative final decision on her suspension without first affording her a hearing. The superior court agreed with the licensee and held that the DPS's in-house appellate procedures were unconstitutional in that they violated the requirements of procedural due process. 272 Ga. at 477.

On appeal, the Georgia Supreme Court observed that a Georgia licensee had two options for appealing the suspension of his or her driving privileges. First, under the Georgia Code, the licensee had the right to file a timely appeal, resulting in a de novo review, to

the superior court from any final decision of the DPS concerning driver's license suspensions. The *Miles* court stated that this statutory appellate procedure satisfied basic due process requirements. 272 Ga. at 477.

In the alternative, a Georgia licensee could first appeal the license suspension directly to the DPS by means of an in-house administrative appeal. Under the DPS's internal rules, an individual was not necessarily afforded a hearing at that stage of the appellate process. The *Miles* court stated that the DPS rules, by themselves, failed to satisfy due process requirements. 272 Ga. at 477. The court observed, however, that by first appealing directly to the DPS, the licensee would not forfeit the right to appeal to the superior court. Relying on *Bell*, 402 U.S. at 542-43, the Georgia Supreme Court held that Miles was not denied her right to procedural due process:

"[W]hen a licensee first pursues an administrative appeal of a driver's license suspension and defers a judicial appeal of such suspension until a later time, the initial administrative appeal may fall short of fulfilling the requirements of due process, so long as that shortcoming is satisfied in a subsequent judicial review to which the licensee is entitled regardless of whether he or she first seeks administrative review." 272 Ga. at 478.

In *Wollenburg v. Conrad*, 246 Neb. 666, 522 N.W.2d 408 (1994), the licensee drove his pickup truck into the side of a railroad car at a rural road crossing. The Nebraska Department of Motor Vehicles (DMV) notified the licensee that his driver's license was to be suspended as of a specific date. The licensee filed a petition in the district court, challenging the suspension. The suspension was automatically stayed, pursuant to Nebraska statute, pending a final court decision. The district court eventually affirmed the DMV's suspension of the licensee's driving privileges. 246 Neb. at 668.

On appeal to the Nebraska Supreme Court, the licensee argued, *inter alia*, that his due process rights were violated because the Motor Vehicle Safety Responsibility Act did not afford him a hearing at the departmental level. The *Wollenburg* court disagreed, finding that the licensee was given due process protections as required by *Bell*, 402 U.S. 535, and *Jennings*, 404 U.S. 25. The Court

observed that the licensee was given adequate notice, the suspension of his driver's license was stayed during the pending proceedings, and he was afforded an opportunity to present evidence and cross-examine witnesses at the district court hearing. 246 Neb. at 670-71; see also *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001) (right to due process violated by department of motor vehicles' discretionary refusal to issue subpoena for person who performed blood test; no discussion regarding de novo review); *Department of Transport., Bureau of Traffic Safety v. Quinlan*, 47 Pa. Commw. 214, 218, 408 A.2d 173 (1979) (de novo hearing before lower court cures any procedural due process defect resulting from lack of administrative hearing); *Lytle v. State Dept. of Licensing*, 94 Wash. App. 357, 362, 971 P.2d 969 (1999) (de novo review had been eliminated; court found insufficient procedural safeguards to protect against due process violations).

Unlike *Miles* and *Wollenburg*, where no initial administrative hearing was afforded the licensees, Kansas motorists are granted by law an administrative predeprivation hearing and are permitted to present limited evidence at that hearing. Like *Miles* and *Wollenburg*, however, Kansas law provides for a de novo hearing before the district court, which cures any procedural due process defects at the administrative hearing level.

## CONCLUSION

Although at first glance *Wulfkuhle* and *Carson* would appear to require the subpoena of a wide range of relevant witnesses at an initial administrative hearing in a driver's license suspension case, the Kansas implied consent law clearly underwent numerous changes after those cases. Legislative changes have provided for an extensive hearing at the administrative level and an automatic extension of driving privileges if the licensee files a petition for review in the district court. K.S.A. 8-1020. With the legislature's 2001 passage of K.S.A. 8-1020(o), a licensee may now, by appealing to the district court, subject to K.S.A. 8-1014, insure himself or herself a full due process hearing before any final action is taken against his or her driving privileges for refusing to submit to a test for intoxication. K.S.A. 8-1020(o), (r), (s). The driver under Kansas law

is provided with a meaningful hearing and the right to call witnesses and cross-examine witnesses before any final action is taken. We conclude that Kempke's due process rights were not violated by Kansas law.

Reversed and remanded to the district court for action consistent with this opinion.