No. 119,151

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MORRIS JOHNSON,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and they must disregard any conflicting evidence or other inferences that might be drawn from it.

2.

In determining whether substantial competent evidence supports the district court's findings, appellate courts will not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.

3.

The exclusionary rule—which prohibits the admission of evidence at trial that officers or other governmental officials obtained through an unlawful search under the Fourth Amendment of the United States Constitution—does not apply in civil administrative driver's license proceedings.

1

4.

A driver may raise Fourth Amendment claims in the administrative driver's license hearing, but such claims do not trigger the exclusion of resultant evidence.

5.

Constitutionally protected procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of life, liberty, or property.

6.

Suspension of a person's driver's license involves state action that adjudicates important interests of the licensees. In such cases the State cannot take the license away without the procedural due process required by the Fourteenth Amendment.

7.

The statutory provisions that allow an administrative hearing and further appeal to the district court for a trial de novo on a driver's license suspension satisfy procedural due process concerns. K.S.A. 2019 Supp. 8-1020; K.S.A. 2019 Supp. 8-259.

8.

If a constitutional claim is governed by a specific constitutional provision, such as the Fourth or Eighth Amendment, the court must analyze the claim under the standard appropriate to that specific provision, not under the rubric of substantive due process.

9.

Generally, the Fourth Amendment applies to all governmental action, not just actions in criminal investigation; and its protections apply to all people, not just criminal defendants.

10.

A breath test is considered a search for Fourth Amendment purposes.

11.

Whether a warrantless search is in a manner consistent with an exception to the warrant requirement necessarily depends on a Fourth Amendment analysis. Accordingly, we do not analyze it under the substantive due process rubric.

12.

Substantive due process has been described as protection from arbitrary government action.

13.

Substantive due process protection limits what the government may do in both its legislative and executive capacities. Criteria to identify what is fatally arbitrary differ depending on whether it is legislation or the specific act of a government officer at issue.

14.

In cases involving abusive executive action, only the most egregious official conduct can be said to be arbitrary in the constitutional substantive due process sense.

15.

If a statute is necessary for the effectuation of a legitimate and substantial state interest, and not applied in an arbitrary or capricious manner, it does not violate the Due Process Clause.

Appeal from Cowley District Court; LADONNA L. LANNING, judge. Opinion filed July 17, 2020. Affirmed.

3

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Adam D. King*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

ARNOLD-BURGER, C.J.:  Morris Johnson appeals the district court's decision affirming the administrative suspension of his driver's license after he was involved in a single-vehicle, noninjury accident in January 2016. He raises two primary challenges: First, he challenges the court's finding that the officer had statutory authority to request blood-alcohol testing; and second, he asserts that the officer or the agency violated his due process rights after the officer read an unconstitutional implied consent advisory. Because we find that the district court relied on substantial competent evidence to find that the officer had reasonable grounds to believe that Johnson operated his vehicle while under the influence of alcohol before requesting a chemical test, the district court did not err. And because we find that Johnson has established no constitutional due process violation after the officer read implied consent advisories later found unconstitutional, his claim fails.

FACTUAL AND PROCEDURAL HISTORY

On an evening in January 2016, dispatchers sent Master Trooper Robert LaVelle to a car accident with possible injuries in Cowley County, Kansas. While the officer was still en route, another report came in that it was a noninjury accident, so he slowed down.

When LaVelle arrived, he began to investigate the accident while the driver—later identified as Johnson—was with EMS workers in an ambulance. Because there were no skid marks and the vehicle was upside down in the opposite ditch, LaVelle ultimately determined Johnson had failed to navigate a curve, gone off the road, then overcorrected

4

and rolled the vehicle off into the opposite ditch. After his investigation, LaVelle told the EMS workers to bring Johnson back to his patrol car when they were finished evaluating and treating him.

Eventually, they began to escort Johnson from the ambulance to the trooper's patrol car. LaVelle testified he noticed Johnson sway from one side to the other as he walked to the car and the firefighters had to weave around Johnson to keep up with him. The lights from the patrol car reflected in such a way to make a straight line from the ambulance, so LaVelle could see Johnson go from one side of the line to the other as he was walking.

Once Johnson was placed in the car, an EMS worker told LaVelle that Johnson had given the wrong birth date while in the ambulance and that he had smelled a very strong odor of alcohol while in the ambulance with Johnson. LaVelle also noticed the odor of alcohol and that Johnson had bloodshot eyes. Johnson failed some nonstandardized field sobriety tests but LaVelle chose not to perform the walk-and-turn test or the one-legged-stand test because of the accident. As a result, LaVelle read Johnson his *Miranda* rights and placed him under arrest for driving under the influence of alcohol (DUI). LaVelle then provided Johnson with a copy of the implied consent advisories form (DC-70) and asked Johnson to submit to an evidentiary breath test.

The DC-70 advisory form provided to Johnson stated, in part:

"1. Kansas law (K.S.A. 8-1001) requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both.

"2. The opportunity to consent to or refuse a test is not a constitutional right.

. . . .

5

"4.      If you refuse to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, you may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence **if** you have a prior refusal for an evidentiary test for alcohol or drugs or a prior conviction or diversion for DUI or driving a commercial motor vehicle with an alcohol content of .04 or more, **and** such prior refusal or conviction occurred on or after July 1, 2001, and when you were 18 years of age or older."

Johnson agreed to take a breath test, which revealed he had a blood-alcohol concentration of 0.163. LaVelle then completed and provided Johnson with a certification and notice of suspension form (DC-27).

Johnson formally requested an administrative hearing. The administrative hearing officer affirmed the suspension of Johnson's driving privileges, finding LaVelle had reasonable grounds to believe Johnson was DUI and reflecting Johnson was involved in a motor vehicle accident. The hearing officer also rejected Johnson's challenge to the advisories.

Johnson timely petitioned for judicial review, arguing the officer lacked reasonable grounds to request testing, that probable cause to arrest him was lacking, and that the advisories in the DC-70 coerced his consent in violation of his due process rights. After a hearing, at which LaVelle and Johnson testified, the district court denied Johnson's petition, affirming the suspension of his driving privileges. First, the court noted the facts were sufficiently similar to *Wright v. Kansas Dept. of Revenue*, No. 116,777, 2017 WL 6062260 (Kan. App. 2017) (unpublished opinion), *rev. denied* 310 Kan. 1071 (2019), to warrant the same outcome. When discussing whether LaVelle had probable cause to arrest Johnson for a DUI, the court explained:

6

"Trooper LaVelle completed a 20- to 30-minute investigation of the accident scene before even speaking to [Johnson]. He noted no skid marks in the accident and that it was of sufficient severity to roll the vehicle. Under the *Poteet* [*v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 233 P.3d 286 (2010)] case, the officer's belief and reasonable basis for finding under the influence of alcohol was only based on his observations of the accident scene and a statement from EMS. There was no meeting of that officer with or testing of the driver. Here, in addition to the scene of the accident and the statement of EMS, Trooper LaVelle noted on the DC-27 report admitted into evidence several observations of [Johnson] listed in paragraph no. 7, without even any testing required. As to Trooper LaVelle doing no walking test, [Johnson's] argument that the accident could have caused him to weave when walking towards the vehicles is unpersuasive. [Johnson] refused treatment from EMS, so no injury was sufficient to prevent his walking. And his walking to the officer or trooper's vehicle was at least 45 minutes to an hour after the accident and after the observations by the EMS, as far as injuries were concerned to petitioner."

Johnson timely appealed.

## ANALYSIS

*The officer had statutory authority to request a breath test.*

Johnson argues the district court erred in concluding the officer had reasonable grounds to request a breath test or probable cause to arrest him for DUI. First, he asserts the court committed legal error by applying an incorrect legal standard when evaluating probable cause, warranting a remand so the district court can apply the correct standard. Alternatively, Johnson points to the lack of any field sobriety testing before his arrest as support to overturn the suspension.

7

*Our standard of review is substantial competent evidence.*

When reviewing a district court's decision in a driver's license suspension case, appellate courts generally will determine whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Substantial competent evidence is evidence that has both relevance and substance and provides a substantial basis of fact from which the court can reasonably resolve the issues. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

In *Casper*, the Kansas Supreme Court clarified that "'[i]n determining whether substantial competent evidence supports the district court's findings, appellate courts *must accept as true* the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" (Emphasis added.) 309 Kan. at 1220; see also *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 414, 233 P.3d 286 (2010) ("[W]e do not consider other evidence that might support a different result as long as sufficient evidence supports the district court's decision."). Nor will this court reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Before the KDOR may suspend a person's driver's license for a breath test failure, a law enforcement officer must certify that the officer had reasonable grounds to believe that the person had operated a vehicle while under the influence of alcohol. K.S.A. 2015 Supp. 8-1002(a)(2). Whether an officer had "reasonable grounds" is a mixed question of law and fact, so this court will independently review the district court's ultimate legal conclusion—whether reasonable grounds existed—but will defer to the district court's factual findings. *Casper*, 309 Kan. at 1213 (citing *Poteet*, 43 Kan. App. 2d at 415).

8

*We review legal standards applicable in an administrative driver's license suspension case.*

As a starting point, we briefly review some of the legal standards applicable in an administrative driver's license suspension case.

The implied consent statute requires an officer to request a person submit to testing under certain conditions. The statute in effect when the State suspended Johnson's driver's license provided:

> "A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) If, at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both . . . and one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) the person has been involved in a vehicle accident or collision resulting in property damage or personal injury other than serious injury." K.S.A. 2015 Supp. 8-1001(b).

Based on this provision, two predicates need to be established before an officer is authorized to request an evidentiary breath test: (1) reasonable grounds to believe a person is DUI; and (2) the person has been placed under arrest, taken into custody, or been involved in a car accident. See also K.S.A. 2015 Supp. 8-1002(a) (requiring officer to certify these facts after a test failure or refusal).

*Johnson was involved in a vehicle accident that damaged property.*

The parties agree that Johnson was involved in a car accident and the record supports that fact. Based on the plain language of the statute, LaVelle did not need to

9

arrest Johnson prior to requesting the test because the car accident supplied the necessary basis to support the second prong. Even so, the first prong was also established.

> *The officer had probable cause to believe Johnson was operating a vehicle under the influence of alcohol.*

Kansas courts have long held that "reasonable grounds" under the implied consent statute resembles probable cause and "[p]robable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that the defendant committed a specific crime. Probable cause does not require an officer have evidence of every element of the crime." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 242 P.3d 1179 (2010). Courts determine the existence of probable cause by evaluating the totality of the circumstances. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012) (citing *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 [2011]).

Although these concepts are basically synonymous, the Kansas Supreme Court has also said that "an officer may have reasonable grounds to believe a person is operating a vehicle under the influence sufficient to request a test under the statute—but not have the probable cause required to make an arrest under K.S.A. 8-1001." *Smith*, 291 Kan. at 514.

Here Johnson argues that LaVelle had no authority to request a breath test because he did not have the requisite reasonable grounds. Johnson asserts that (1) the district court improperly relied on a disapproved definition of probable cause; and (2) reasonable grounds did not exist based on the lack of sufficient information that Johnson was driving while under the influence.

*The district court applied the correct probable cause standard.*

Johnson first contends the district court applied the wrong legal standard when evaluating probable cause, asserting the KDOR improperly referenced a definition later disapproved of by the Kansas Supreme Court. The panel decision in *Poteet* relied on previous language providing that "[p]robable cause to arrest is reached when a reasonably prudent police officer would believe that guilt is 'more than a mere possibility.'" 43 Kan. App. 2d at 416. As Johnson points out and the KDOR acknowledges, the Kansas Supreme Court explicitly disapproved of this language in *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 21, 290 P.3d 555 (2012). *Sloop* clarified that probable cause exists when

> "'"the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.'" 296 Kan. at 21.

That said, we agree with the KDOR that merely referencing *Poteet* in its ruling does not mean the district court applied the disapproved definition of probable cause. The district court's use of *Poteet* was simply to compare the facts supporting a probable cause finding. The court specifically noted that the probable cause finding in *Poteet* was "only based on [the officer's] observations of the accident scene and a statement from EMS" and "[t]here was no meeting of that officer with or testing of the driver." In contrast, the court here found that the facts showed:  (1) LaVelle had completed a 20- to 30-minute investigation of the scene *before speaking with Johnson*; and (2) LaVelle observed several signs of impairment—including an odor of alcohol, failed sobriety tests, slurred speech, bloodshot eyes, difficulty communicating, poor balance/coordination, and Johnson admitting he consumed alcohol. Although the court never explicitly stated as much, the record establishes that the court correctly considered the totality of the

11

circumstances when evaluating probable cause. Nor did the district court err in its conclusion that these facts supported a finding of probable cause to arrest Johnson.

*Substantial competent evidence supports the district court's findings.*

As Johnson succinctly explains in his brief, his "chief argument is that the trooper did not do any sort of testing or analysis" before placing him under arrest for DUI and requesting a blood-alcohol test, thus the officer lacked sufficient information to establish the required probable cause. Johnson also contends that he could easily explain the available evidence by the fact he was just in a car accident. These arguments are not persuasive.

First, the record refutes Johnson's "chief argument." While LaVelle agreed that he chose not to ask Johnson to perform the walk-and-turn test or the one-legged-stand test because of the accident, his testimony suggests he performed at least *some* field sobriety testing. During redirect examination at the trial, the following exchange occurred:

"[Counsel for KDOR]: . . . [I]sn't it true that on *some of your testing*, you didn't do the walk and turn and one-legged stand test because he'd been in an accident?
[LaVelle]: That's correct, sir." (Emphasis added.)

The administrative hearing officer's notes also reflect Johnson failed two nonstandardized tests, specifically the alphabet test and the "Finger test."

Second, in reviewing the evidence we "must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it." *Casper*, 309 Kan. at 1220. Substantial competent evidence supported the district court findings. More specifically:

12

- Johnson was in an accident while it was still light outside, in which he missed a curve, overcorrected, and rolled into a ditch.

- There were no skid marks.

- Johnson totaled his vehicle.

- Attending EMS and the arresting officer both noted a "very strong odor" of alcoholic beverage coming from Johnson.

- Trooper LaVelle observed Johnson weaving while he walked.

- Lavelle noticed Johnson had bloodshot eyes.

- Johnson had no apparent injuries from the accident.

- Johnson declined medical treatment.

- LaVelle also noted that Johnson provided an incorrect date of birth to the EMS attendants.

Finally, Johnson asks this court to reweigh the evidence to support an alternate conclusion: that the officer misinterpreted his observations as signs of impairment, when they could have easily been explained as consequences of the car accident. This analysis would deviate from the standard of review. See *Casper*, 309 Kan. at 1220. As mentioned, the district court found multiple facts that supported the reasonable grounds ruling: (1) LaVelle's investigation of the accident—specifically the lack of any skid marks on the road—suggested Johnson had missed the curve, overcorrected, and rolled the vehicle into the ditch; (2) EMS workers made statements suggesting Johnson was impaired; (3) LaVelle observed signs of impairment in Johnson; and (4) Johnson's refusal of treatment and delay after the accident—which both undercut his argument that injuries from the accident explained his weaving. Each of these factual findings are supported by LaVelle's testimony recounting his observations that evening.

In sum, the facts here present a substantial factual basis to support the officer's belief that the car accident occurred because Johnson was driving while under the

13

influence of alcohol. Those facts supported the district court's ultimate conclusion that probable cause existed to support a lawful arrest. And the accident established the necessary predicate without the arrest, so the officer had to request a breath test because he had reasonable grounds to believe Johnson was DUI. That test suggested Johnson was driving with a blood-alcohol concentration above the limit permitted by Kansas law. We find that substantial competent evidence supports the district court's conclusions and its legal analysis was correct.

*The State did not violate Johnson's due process rights.*

Johnson next argues the officer violated his due process rights because the officer incorrectly advised him that the opportunity to consent or refuse a blood-alcohol test is not a constitutional right and that he could be charged with a crime for refusing the test. As the KDOR points out, Johnson's claim is somewhat difficult to discern because he appears to make three separate but related arguments: (1) The breath test results were obtained unlawfully because his consent was coerced in violation of the Fourth Amendment; (2) his procedural due process rights were violated based on *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 133 P.3d 104 (2006); and (3) his substantive due process rights were violated based on *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*).

*We examine our standard of review.*

Because appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act (KJRA), this court's scope of review is limited by K.S.A. 77-601 et seq. On appeal, the burden of proving the invalidity of an agency action rests on the asserting party—in this case Johnson. See K.S.A. 77-621(a)(1). Under K.S.A. 77-621(c), this court can only grant relief if one or more of the eight listed

circumstances are present. In his petition for review of administrative hearing order, Johnson delineates these four statutory bases for his petition:

> "[The agency has] acted beyond the jurisdiction conferred by law; [the agency] has erroneously interpreted or applied the law; [the agency] has engaged in an unlawful procedure or has failed to follow prescribed procedure; and [the agency] action is based upon a determination of fact that is not supported by substantial evidence when viewed in light of the record as a whole."

In addition, matters of statutory and constitutional interpretation "raise pure questions of law subject to unlimited appellate review." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, Syl. ¶ 1, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015). As a result, when resolving Johnson's claims involves either statutory or constitutional interpretation, this court exercises unlimited review.

To begin, the parties agree that some of the information in the implied consent advisories Johnson received were later declared unconstitutional. Just a month after Johnson's failed breath test, the Kansas Supreme Court held that the statute imposing criminal penalties on a driver for withdrawing his or her implied consent or refusing to submit to a breath test was facially unconstitutional. *Ryce I*, 303 Kan. 899, Syl. ¶ 12. Similarly, in *State v. Nece*, 303 Kan. 888, 897, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*), our Supreme Court held that giving unconstitutional implied consent advisories before a defendant's consent leads to coercion.

To date, the Kansas Supreme Court has not invalidated the entire Kansas implied consent statutory scheme and has not expressed willingness to do so.

*The exclusionary rule does not apply in administrative driver's license suspension cases.*

That said, the *Ryce* and *Nece* decisions—which both involved criminal DUI trials—have little bearing on Johnson's administrative driver's license suspension case. As the Kansas Supreme Court has recognized, an administrative suspension is a civil matter and "civil and criminal proceedings are wholly separate from one another and are intended to serve two different purposes." *Martin*, 285 Kan. at 642. The court found that the exclusionary rule—which prohibits the government from submitting evidence at trial that was obtained through an unlawful search under the Fourth Amendment—does not apply in civil administrative driver's license proceedings. *Martin*, 285 Kan. at 646; see also *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 396, 204 P.3d 562 (2009) ("[A] petitioner may *raise* Fourth Amendment claims, but such claims have *no practical effect* [meaning such claims do not trigger the exclusion of resultant evidence] in the administrative context.").

Johnson makes clear in his brief that he does not believe cases discussing the exclusionary rule and suppression of evidence are relevant, yet he mainly cites criminal cases analyzing those issues. See *Ryce I*, 303 Kan. at 944 ("Fourth Amendment principles recognize that a consent implied through 8-1001 can be withdrawn."); *State v. Edgar*, 296 Kan. 513, 527, 294 P.3d 251 (2013) ("[I]t is well established that consent to search may be withdrawn in other contexts when warrantless Fourth Amendment searches are premised on that consent.").

Johnson does cite *Sloop*, 296 Kan. 13, asserting that it is directly analogous to the facts here. But Sloop's driver's license suspension was overturned because the Kansas Supreme Court determined the arresting officer lacked probable cause, precluding statutory authority to even request the test. 296 Kan. at 23. Johnson seeks to characterize this as suppressing "the results of the request for testing (in that case a refusal)," but that

16

is not a fair description. The *Sloop* court essentially determined the suspension would be invalid even if the driver had consented since the officer *lacked statutory authority* to request the test. In contrast, as discussed, the officer here had statutory authority to request Johnson submit to testing, so any reliance on *Sloop* is misguided.

And finally, even if we were to recognize the application of the exclusionary rule in the context of an administrative driver's license suspension, we would find the good-faith exception to the exclusionary rule applies under these circumstances. The good-faith exception to the exclusionary rule initially applied when a law enforcement officer reasonably relied on a search warrant later found to be invalid, but the exception has since been extended to law enforcement officers who reasonably rely on a statute authorizing a warrantless search later found to be unconstitutional. See *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010) (adopting *Krull*), *cert. denied* 563 U.S. 945 (2011). To determine whether a law enforcement officer reasonably relied on a statute, courts are to consider whether the Legislature "'wholly abandoned its responsibility to enact constitutional laws'" and whether the statute was so clearly unconstitutional that a reasonable officer should have known that it was unconstitutional. *Daniel*, 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355); *State v. Kraemer*, 52 Kan. App. 2d 686, Syl. ¶¶ 6-7, 371 P.3d 954 (2016).

Here, it is undisputed that Johnson was arrested *before* the release of the *Ryce I* and *Nece I* decisions by the Kansas Supreme Court. As this court found in *Kraemer*, 52 Kan. App. at 699, there is "nothing here to suggest either that the Kansas Legislature wholly abandoned its responsibility to enact constitutional laws or that [K.S.A. 2015 Supp. 8-1025] was so clearly unconstitutional . . . that a reasonably well-trained officer would have known that it was unconstitutional." When LaVelle arrested Johnson, K.S.A. 2015 Supp. 8-1001 required that he advise Johnson of the potential criminal consequences of refusal before asking him to submit to testing. We would not expect a

17

reasonable law enforcement officer to predict the answer to this difficult constitutional question. See *State v. Perkins*, 310 Kan. 764, 771, 449 P.3d 756 (2019) (good-faith exception applied in criminal DUI case when officer gave unconstitutional implied consent advisory). The good-faith exception to the exclusionary rule would allow admission of the breath test result under Fourth Amendment jurisprudence.

In short, Johnson has not provided a persuasive argument that he is entitled to relief based on Fourth Amendment principles.

So the analysis must turn to whether Johnson's due process rights were violated under K.S.A. 8-1001 et seq. Yet whether Johnson is alleging a procedural or substantive due process violation is difficult to discern from his brief. As a result, we will discuss both.

*Johnson fails to establish a procedural due process violation.*

Constitutionally protected procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of life, liberty, or property. U.S. Const. amend. XIV; Kan. Const. Bill of Rights, § 18; *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 462, 447 P.3d 959 (2019). Johnson correctly cites *Kempke* in support of a right to procedural due process in a driver's license suspension case.

> "A person's entitlement to due process in drivers' license suspension cases is well-settled. '"Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." [Citations omitted.]'" 281 Kan. at 776.

18

In *Kempke*, the Kansas Supreme Court determined that the provisions allowing an administrative hearing and further appeal to the district court for a trial de novo on a driver's license suspension satisfy procedural due process concerns. 281 Kan. at 794-95 ("Due process requires notice and a meaningful hearing before formal action is taken to deprive a person of his or her license; both of these are provided under current Kansas law."); see K.S.A. 2019 Supp. 8-1020. K.S.A. 2019 Supp. 8-259; see also *Creecy*, 310 Kan. at 465 (holding a mandatory $50 administrative fee before a driver can exercise the right to a hearing on the suspension of driving privileges is facially unconstitutional as a deprivation of procedural due process); *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 215, 755 P.2d 1337 (1988) ("'The Kansas statute, which allows for a full evidentiary hearing before driving privileges are suspended, does not violate due process merely because the plastic driver's license is taken and a paper license substituted in its place.'"). This court is duty-bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014).

As the KDOR points out, Johnson never alleges that he was deprived a chance for an administrative review or trial de novo on his claims. Thus, his procedural due process claim fails because the record shows both administrative and judicial review of his driver's license suspension.

> *Because Johnson's claim is covered by the Fourth Amendment, he cannot pursue a substantive due process claim.*

The Fourteenth Amendment to the United States Constitution protects both procedural and substantive due process rights against state government interference. See *State v. Robinson*, 303 Kan. 11, 175, 363 P.3d 875 (2015). Because Johnson contends very broadly that his due process rights were violated, we next look to his claim of a violation of substantive due process under these facts.

We begin with the rule established by the United States Supreme Court that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). In *Martin*, 285 Kan. at 635, the Supreme Court found the "[g]enerally the Fourth Amendment applies to all governmental action, not just actions in criminal investigation; and its protections apply to all people, not just criminal defendants." A breath test is considered a search for Fourth Amendment purposes. *Nece I*, 303 Kan. at 890. Whether a warrantless search in a manner consistent with an exception to the warrant requirement—consent being the one relied on here—the foundational issue necessarily depends on a Fourth Amendment analysis. We conclude that under *Lanier*, we cannot analyze this case under a substantive due process rubric. The case must rise or fall on a Fourth Amendment analysis. We have already examined why Johnson's claim fails under a Fourth Amendment analysis.

*Johnson fails to establish a substantive due process violation.*

But even examining Johnson's substantive due process claim, we find it fails.

Substantive due process has been described as protection from arbitrary government action. *Darling v. Kansas Water Office*, 245 Kan. 45, 51, 774 P.2d 941 (1989). It protects fundamental liberty interests against government encroachment. See *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). "Among recognized substantive due process liberty interests are the right to bear and raise children, the right to marry, and various other rights closely allied with those explicitly guaranteed in the Bill of Rights." *Taylor v. Kansas Dept. of Health and Environment*, 49 Kan. App. 2d 233, 244, 305 P.3d 729 (2013). "While due process protection in the substantive sense limits what the government may do in both its legislative, and its executive capacities, criteria to identify what is fatally arbitrary differ

20

depending on whether it is legislation or a specific act of a governmental officer that is at issue. [Citations omitted.]" *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

It appears Johnson is claiming the driver's license suspension statute itself violates his substantive due process rights. We draw this conclusion because he makes no claim against any individual government actor, except perhaps LaVelle who read the now unconstitutional advisory to him. But cases involving abusive executive action "emphasize[] that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" 523 U.S. at 846. The parties agree that LaVelle merely read the statutorily mandated implied consent advisory to him—an advisory that our Supreme Court had not yet declared unconstitutional in the criminal context. Such conduct could not reasonably be described as egregious official conduct.

Nor does he make a specific claim against the government agency—Kansas Department of Revenue—as the "bad actor" here. Although in his petition for review of administrative hearing order he claims the agency has erroneously interpreted or applied the law and the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure, he does little on appeal to pursue that argument except for a conclusory statement: "Allowing the government to suspend driving privileges based upon testing results obtained through involuntary consent violates Due Process." We should not be forced to speculate about his argument and the support for it or lack thereof. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). So we decline to examine Johnson's substantive due process claim as it relates to egregious action on the part of a governmental agency—here the Kansas Department of Revenue.

21

Because Johnson makes no cognizable claim regarding substantive due process related to any individual or agency government actor, the only alternative is a legislative claim. In reviewing legislation as a violation of substantive due process, the Kansas Supreme Court has held that "statutes, if reasonably necessary for the effectuation of a legitimate and substantial state interest, and not an arbitrary or capricious in application, are not invalid under the Due Process Clause. *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306, 318, 532 P.2d 1263 (1975); see also *Brown v. Wichita State University*, 219 Kan. 2, 21, 547 P.2d 1015 (1976) (noting that when legislation is challenged as violative of due process, the challenger must demonstrate that the legislation bears no reasonable relation to a permissible legislative objective).

Johnson's substantive due process claim appears to rely on language in *Ryce I*. He points to the court's quote from *United States v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982), that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Ryce I*, 303 Kan. at 956. But we must put this quote in context. The *Ryce I* court's substantive due process analysis centered on the fact that the driver in that case had *refused* a test. So K.S.A. 2014 Supp. 8-1025 (criminalizing refusal to take a breath test) was punishing Ryce for doing something he had a right to do—refuse the breath test. It was K.S.A. 2014 Supp. 8-1025 that violated substantive due process, not K.S.A. 2014 Supp. 8-1001. That was not the case here. Johnson took the test. And clearly, based on the court's decision in *Nece II*, an implied consent advisory that unconstitutionally threatens criminal prosecution for refusing a test is not voluntary and, based on the exclusionary rule, cannot be used against a defendant in a criminal trial. 306 Kan. at 681.

But this is not a criminal proceeding and Johnson provides no other argument for a substantive due process claim in his civil driver's license suspension case. Our Supreme Court has been clear that a person does not have a fundamental right to have a driver's license. "But once a person does possess a driver's license, that person has an interest in

22

the license which the State cannot take away without providing procedural due process." *Creecy*, 310 Kan. at 466. We have already determined that Johnson was not denied procedural due process. Johnson does not claim that the statutory scheme for suspension of driver's licenses does not amount to a legitimate and substantial state interest, nor does he argue that it was applied here in an arbitrary or capricious manner. See *Kansas Commission on Civil Rights*, 216 Kan. at 318. Our Supreme Court has held that "compulsory testing for alcohol or drugs through driver's implied . . . consent does not violate the Constitution; it is reasonable in light of the State's compelling interest in safety on the public roads." *Martin*, 285 Kan. at 635. For these reasons, Johnson has not made a cognizable claim for a violation of his substantive due process rights in this case.

Affirmed.